# Richmond.

Southern Railway Co. v. Gregg.

.March 12, 1903.

1. EMINENT DOMAIN—*Payment of Damages—Acquisition of Title.*—In proceedings to condemn land for a public use, the payment of the sum ascertained to be a just compensation is a condition precedent to divesting the owner of land of his title thereto, and is as indispensable as a conveyance between an ordinary vendor and vendee. Such owner, until payment is made, stands on substantially the same plane as a vendor who has retained title as security for the purchase money.

2. EMINENT DOMAIN—*Damages Assessed—Lien—Enforcement in Equity.*—Where land has been condemned for a railroad, but the compensation therefor has not been paid, the owner of the land has a lien thereon. for such compensation which a court of equity will enforce against the land in the hands of the petitioner in the condemnation proceedings and all persons claiming under him.

3. EMINENT DOMAIN—*Non-Payment of Damages—Entry by Petitioner—Waiver.*—The entry of a railroad company upon land condemned for its purposes, and the construction of its road bed thereon before paying the damages assessed, without objection on the part of the owner, cannot be regarded as a waiver by the owner of his lien upon the land for the amount of the damages, especially where the right to enter was neither asked nor obtained.

4. EMINENT DOMAIN—*Case in Judgment—Waiver of Lien for Damages.*—In this case land was condemned for the purposes of a railroad company, but the damages assessed were never paid. The company, without express consent, entered and constructed its road bed. The company failed and its property was sold and afterwards passed successively to several different companies. The owner demanded payment. of the superintendents of each of these companies, and they promised payment. The owner was in the employment of the first company and in easy circumstances, while the company was financially embarrassed.

*Held:* There has been no waiver by the owner of his lien on the land for the damages assessed.

5. TITLE TO LAND—*Disclaimer.*—Where the legal title to land is vested in a person, no mere parol disclaimer can divest it. Disclaimer of a freehold can only be by deed, or in a court of record.

6. LACHES—*Abandonment of Claim—Continuous Claim and Acknowledgment.*—Laches is only permitted to defeat an acknowledged right on the ground that it affords evidence of the abandonment of the right. The doctrine, therefore, can have no application to a case where a demand has been continuously asserted and as continuously acknowledged.

7. EVIDENCE—*Record—Third Persons Unaffected—Creditor's Suit.*—The owner of land condemned for the purposes of a railroad company, and who has a lien on the land for the damages assessed, is in no way bound or affected by the proceedings in a lien creditor's suit against the company to which he was no party, and of which he knew nothing, except what he had casually heard or read in the newspapers, and, in a suit to enforce his lien, the record of the creditor's suit cannot be used in evidence against him.

Appeal from several decrees, pronounced by the Circuit Court of Loudoun county, in a suit in chancery, wherein the appellee was the complainant, and the appellant and others were the defendants.

*Affirmed.*

The opinion states the case.

*Munford, Hunton, Williams & Anderson,* for the appellant.

*E. E. Garnett* and *Edward Nichols,* for the appellee.

WHITTLE, J., delivered the opinion of the court.

There is practically no controversy in respect to the facts involved in this appeal. It appears that in the year 1869 the Alexandria, Loudoun & Hampshire Railroad Company instituted proceedings in the County Court of Loudoun county to condemn certain lands situated therein upon which its proposed road was to be located. In September, 1870, the commissioners appointed for that purpose reported that the lands of appellee, Gregg, proposed to be taken by the company for its purposes contained three acres, three roods and seven poles,

and ascertained that $296.09 would be a just compensation therefor. The report was confirmed February 14, 1871, on motion of the Washington & Ohio Railroad Company, the successor of the Alexandria, Loudoun & Hampshire Railroad Company, but was not recorded in the clerk's office until February 11, 1895. The new company succeeded to all the rights of the original company, and, in the year 1874, without having paid the compensation allowed by the commissioners either to appellee or into court, entered upon the land in controversy and proceeded to construct its road thereon. The company took possession of the land without asking or obtaining the permission of appellee; but he interposed no objection to the entry.

It further appears that appellee has never received any compensation for the property taken by the company, and did not intend to waive his rights by tacitly permitting it to take possession of his land. On the contrary, he from time to time made demand upon the superintendents of the various companies for payment of the amount which had been allowed him. These officials admitted that the claim was justly due, and promised to settle it, but never did so. The last demand was made on the superintendent of the Southern Railway Company, only a year or two before the commencement of this suit, but it does not appear that he acknowledged liability on the part of that company.

While the authority of these officers to bind their respective companies was not proved, they nevertheless promised to pay the damages, and that circumstance at least shows that appellee did not intend to waive his rights.

Appellee was in the employment of the Washington & Ohio Railroad Company and its successors, as depot agent, from the time the company first commenced to do business until November, 1899. He had a small family dependent on him for support, and was in easy circumstances, while the company, on the contrary, was in great financial stress. About the year 1877 a

lien creditors' suit was instituted against it, and the road was subsequently sold and reorganized under the name of the Washington & Western Railroad. The last-named company having made default in the payment of the purchase money, the property was again sold, and the company reorganized as the Washington, Ohio & Western Railroad. That company mortgaged the road, and operated it until the year 1894, when the property was conveyed to appellant, the Southern Railway Company.

Appellee was not made a party to the lien creditors' suit, and was not called on to report his claim therein. He did not even know in what court the suit was pending, but heard or read in a newspaper that the road had been decreed to be sold.

In the year 1900 appellee filed a bill in equity in the Circuit Court of Loudoun county against appellant and others to subject the land in controversy to sale for the satisfaction of the compensation allowed him by the commissioners in the condemnation proceedings, to-wit, the sum of $296.09, with interest thereon from July 1, 1874.

There was a demurrer to the bill, and also two pleas of the statute of limitations, the one setting up a limitation of three years, and the other a limitation of five years in bar of a recovery.

In its answer the Southern Railway Company avers that it is not advised whether the amount claimed by appellee was ever paid; but insists that, at the date of its purchase, it found those under whom it claims in possession of the land, and presumed, and had a right to presume, that the law had been complied with, and that possession had been transferred from appellee to them by virtue of payment of the compensation allowed. But that if said damages have not been paid, appellee has waived his right to the same against appellant, a purchaser for value and without notice.

It further denies that appellee has a vendor's lien, or a lien in the nature of a vendor's lien, on the land for the amount of

his demand.   And it insists that if all the allegations of the bill
are true, appellee's claim amounts to a mere personal right of
action against the Washington & Ohio Railroad Company.

The answer also relies on the presumption of payment from
lapse of time, and laches.   The deposition of appellee was
taken, and at the hearing the Circuit Court overruled the de-
murrer and the two pleas of the statutes of limitations, and es-
tablished the demand of appellee as a lien on the land in con-
troversy.   The last decree in the case provides for a sale of the
land, unless the lien, with interest and costs, is paid within sixty
days.   To these decrees an appeal was allowed by one of the
judges of this court.

It is conceded that the statute of limitations has no applica-
tion to appellee's demand, and that there was no error in the
action of the court in overruling the pleas which interposed
that defence.

On the demurrer the contention is that appellee has no lien
on the land in controversy, and for that reason a court of equity
is without jurisdiction in the premises, and the demurrer ought
to have been sustained.   The soundness of that contention will
be considered in connection with the merits of the case.

In the condemnation proceedings the appellee bore the rela-
tion of an enforced vendor to appellant's predecessor in title, the
Washington & Ohio Railroad Company, and their respective
rights in regard to the property must be determined in the
light of the acknowledged principle of universal law, that pri-
vate property cannot be taken for public use without just com-
pensation (2 Kent's Com. 339), and of the statutory enactment,
regulating such proceedings, found in section 1079 of the pres-
ent Code, that "The sum so ascertained to be a just compensa-
tion may be paid to the person entitled thereto, or in court.

"Upon such payment the title to the part of the land for
which such compensation is allowed shall be absolutely vested
in the company   .   .   .   in fee simple."   The essential ele-

ment of this extraordinary mode of acquiring title to real estate is the payment of the sum ascertained to be a just compensation. That requirement is a condition precedent, and as indispensable to divest the title of the owner as is a conveyance between an ordinary vendor and vendee. Until that condition is complied with he remains as completely invested with title and occupies as high a plane in respect to the property as does an ordinary vendor who has retained title as security for the purchase money. That being the inevitable result of the principle adverted to and the statutory provision, the rules applicable to this case and to the case of an ordinary vendor and vendee are analogous, if not identical.

These principles are well settled and familiar to the profession.

Mr. Barton, in discussing the subject, says: "But neither before or under the statute (meaning the statute abolishing the vendor's equitable lien) must the case of a vendor's lien be confounded with the right of a vendor who has retained title, to enforce specific execution by compelling the payment of the purchase money, and to subject the land sold therefor, for the vendee and persons claiming under him can never compel a relinquishment of the legal title except upon the terms of a full payment of the purchase money." 2 Bar. Chy. Pr. (2d ed.) 985. This statement of the law is sustained by numerous decisions of this court to which he refers.

"That the vendor retaining the legal title occupies a position different from and higher than one who has parted with the legal title and relies on the mere implied equitable lien, is not only clear from the considerations aforesaid, but is shown by the authorities. Notwithstanding the doubts of Lord Eldon, it may now be considered as well established that where the vendor who has conveyed takes a personal collateral security, binding others as well as the vendee, as a bond or note with security, the lien on the land does not exist. But in the case of

*Hatcher's Admx.* v. *Hatcher's Ex'ors,* 1 Ran. 53, the purchaser gave bond with security for the purchase money, but received no conveyance; and it was decided that the right of the vendor to resort to the land was not lost by taking personal security. In that case, a suit at the instance of the security to subject the land for his indemnity was sustained, before he had been compelled to pay himself. And upon the same principle it was held in *Lewis* v. *Caperton's Ex'or,* 8 Gratt. 148, that the vendor retaining the legal title may resort to the land as against creditors and incumbrances of the vendee, although the vendee had subsequently executed a deed by which he conveyed other property to secure the purchase money." Opinion by Allen, Judge, in *Yancey* v. *Mauck,* 15 Gratt. 307.

At page 306, Judge Allen observes: "Among the circumstances to repel the presumption of an intention to resort to the estate, is the making of a conveyance of the legal title; a circumstance always sufficient to repel the presumption as against a *bona fide* purchaser from the vendee having the legal title. But a purchaser or an incumbrancer of a mere equitable title must take the place of the person from whom he purchases.".

And again, at page 308: "The vendee cannot compel a relinquishment of the legal title until he clothes himself with equity by the payment of the purchase money." See also, *Coles* v. *Withers,* 33 Gratt. 193, where Judge Staples remarks: "Upon this subject I refer to the able and exhaustive opinion of Judge Allen in *Yancey* v. *Mauck.*"

Mr. Barton comments on that case as follows: "The learned Judge there calls attention to the fact that, where no deed has been executed by the vendor, very different considerations govern; that, in such cases, the question of *implied waiver* does not arise, and that no distinct personal or collateral security will operate as a waiver; for, by retaining the title, the vendor has manifested, in the most unmistakable manner, his purpose

of looking to the land as security for his debt; and no court of equity will compel him to part with the title until he has actually received the consideration." 2 Bar. Chy. Pr. (2d ed.), p. 987.

Thus it appears that the contention of appellee, that his demand in this case constitutes an equitable lien on the property condemned, which a court of equity will enforce, is fully sustained by the principles applicable to the analogous case of an ordinary vendor and vendee.

But the contention is also directly upheld by the decisions of other States in condemnation proceedings. See *Fries* v. *Railroad Co.* (Ohio), 46 N. E. 516; *Kendall* v. *Railroad Co.*, 55 Vt. 438; *Kittell* v. *Railroad Co.*, 56 Vt. 96; *Adams* v. *Railroad Co.*, 57 Vt. 240; *Bridgman* v. *Railroad Co.*, 58 Vt. 198, 2 Atl. 467; *Railroad Co.* v. *Harvey*, 107 Pa. 319; *Epling* v. *Dickson, Recv'r*, 170 Ill. 329, 48 N. E. 1001.

In *Railroad Company* v. *Hall*, 135 Ind. 91, 34 N. E. 704, 23 L. R. A. 231, it was said: "The new company is enjoying the easement under the conditions of the old company, and the benefits and burdens incident to its use are inseparable."

And in *Railroad Company* v. *Galey*, 141 Ind. 483, 39 N. E. 940, 40 N. E. 801: "A new railroad company which succeeds to the rights of the old company cannot divest itself of the burdens of the old company, among which are damages for the appropriation of land for right of way. The contrary to this has been expressly decided. A man's land cannot be taken from him without compensation. The new railroad company which succeeds to the rights and privileges of the old company cannot divest itself of the burdens."

It follows, therefore, from these authorities that the demurrer to the bill was properly overruled.

The sole ground relied on by appellant to establish a waiver on the part of appellee of his equitable lien in this case is the circumstance that its predecessor in title, the Washington &

Ohio Railroad Company, was allowed to enter upon the possession of the land and construct its road thereon without having first paid the damages assessed against it as required by law.

.. It will be recalled that this action of the company was taken without either asking or obtaining the permission of appellee, but that he interposed no objection.

It must be observed also that the alleged ground of waiver is unaffected by lapse of time. The waiver, if there was a waiver, was as complete the day after the company took possession of the property as it was at the time of the institution of this suit; and, if the contention of the appellant is sound, would have as effectually defeated an assertion of the lien at the former as at the latter date.

"A complete title to lands embraces three several stages or degrees—namely, (1) The mere possession; (2) The right of possession (which may be either apparent or real); and (3) The mere right of property." 2 Min. Inst. 447.

Now the contention of appellant leads to the conclusion that a surrender of one of these subordinate elements of a complete title constitutes an abandonment of them all.. If that view prevails, it would carry the doctrine of waiver far beyond its reasonable and legitimate scope, and if applied to transactions between ordinary vendor and vendee would engraft a dangerous innovation on the well established principles regulating the devolution of title to real estate in this Commonwealth.

As title to private property by *mere operation of law* can be only acquired by payment of the ascertained value, it is essential for appellant, in order to rely on the extraordinary method of acquisition, to prove performance of the condition by which alone the owner can be divested of his title.

Where, however, it relies on the acquisition of title in the ordinary way, by *act of the parties*, such act must conform to the requirements of law applicable to that mode of divestiture of freehold title to land.

The subject of parol disclaimer of title has quite recently received the consideration of this court. The rule is stated thus: "Where the legal title is vested in one, no mere *parol disclaimer* can divest title. It has been long settled here that disclaimer of a freehold can only be by deed, or in a court of record." *Suttle* v. *R., F. & P. R. Co.,* 76 Va. 284; *Jennings* v. *Gravely,* 92 Va. 377, 23 S. E. 763; *Haney* v. *Breeden,* 100 Va. 781, 42 S. E. 916.

Waiver is the intentional relinquishment of a known right, with both knowledge of its existence and an intention to relinquish it.

"Waiver of lien—Such consent to enter upon the land, to construct the road, the arrangement as to damages, their appraisal by commissioners, do not constitute a waiver; a clear and express contract is necessary." *Kittel* v. *Railroad Co., supra.*

It affirmatively appears from this record that appellee did not intend to relinquish any of his rights by tacitly permitting the company to take possession of his land. On the contrary, he was insistent in demanding payment of the superintendents of the various companies, and their repeated promises to settle makes it manifest that neither party understood that there had been an abandonment or waiver of any right. This positive evidence of a continual claim by appellee and promise to settle by the superintendents, strengthened by the circumstances that appellee was in the employment of the company and was in easy circumstances, while the company was laboring under financial embarrassment, repels any presumption of payment from lapse of time.

And the same evidence and circumstances fully answer the suggestion that the claim is barred by laches. There is no pretence that the justness of the demand is obscured by lapse of time, death of parties, or loss of evidence. Indeed, the pleadings do not even put in issue the question of payment, and appellee's testimony that the claim has never been paid is not de-

nied.   Laches is only permitted to defeat an *acknowledged right* on the ground of its affording evidence that the right has been abandoned.   The doctrine can have no application, therefore, to a case where the demand is continuously asserted and as continuously acknowledged.

The last assignment of error is to the ruling of the court in suppressing and refusing to admit as evidence excerpts from the record in the lien creditors' suit against the Washington & Ohio Railroad Company, heretofore referred to.   The facts in relation to that suit have been stated.   Appellee was not a party, he did not know in what court the suit was pending, he had no notice of the taking of the account, and casually heard or read in a newspaper that the property of the company had been decreed to be sold.   He was not bound or affected by any of the proceedings in that cause, and the court properly excluded the parts of the record offered in evidence.

Mr. Barton, in discussing the effect of decrees in creditors' suits, says:   "The rule has not been carried to the extent of holding that the lien creditors of a living man who has not been made a party, or proved his claim before the commissioner, will be bound by the proceedings in the suit."   1 Bar. Chy. Pr. (1st ed.), 177, note.   See also, 1 Bar. Chy. Pr. (2d ed.) 364.

There is no error in the decrees complained of, and they are affirmed.

*Affirmed.*