## SOUTHERN RY. CO. v. PEPLE.

### In re STANTON TANNING CO., Inc.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1915. Rehearing Denied December 11, 1915.)

No. 1354.

1. LANDLORD AND TENANT ⬤➾86—LEASES—COVENANTS FOR RENEWAL—CONDITIONS PRECEDENT—WAIVER.

A railway company leased land to C. for 10 years, with the right of renewal; the lease requiring the lessee to erect a two-story brick warehouse on the land, and providing that, as a condition precedent to a renewal, the lessee should serve notice of his election to renew 90 days prior to the expiration of the term. C. sublet the premises, with the railway company's consent, for a period extending 14 months beyond the 10-year term, and organized a corporation to take over his business, which corporation executed a mortgage on the leasehold interest to secure an issue of bonds when the lease had only 2 years to run. The railway company's consent to the sublease and to the assignment and execution of the mortgage, however, was expressly made subject to the terms and provisions of the lease. By inadvertence, notice of the lessee's election to renew was not given until 60 days before the expiration of the 10 years. The railway company delayed answering for about 5 weeks, and then replied, explicitly promising to renew the lease upon the lessee writing a more formal letter on the subject to its vice president and general manager, which letter was written. *Held* that, the railway company's consent having been expressly made subject to the terms of the lease, the subletting and the assignment to the corporation and execution by it of the mortgage and the erection by the lessee of the warehouse contemplated by the lease were not sufficient in themselves to constitute evidence of waiver of the provision requiring notice of the election to renew to be given 90 days before the expiration of the term.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 270–275; Dec. Dig. ⬤➾86.]

2. LANDLORD AND TENANT ⬤➾86—LEASES—COVENANTS FOR RENEWAL—CONDITIONS PRECEDENT—WAIVER.

That the railway company allowed the lessee to remain in possession and pay rent and taxes after the expiration of the term pending negotiations for an adjustment of the differences between the parties was not in itself evidence of waiver, since, while continuance in possession by a tenant with the payment of rent will usually be regarded as a renewal of the lease, the acceptance of the rent being considered a waiver of any right to notice of intention to renew, this rule does not apply where the possession is retained and the rent paid pending negotiations with respect to a renewal of the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 270–275; Dec. Dig. ⬤➾86.]

3. LANDLORD AND TENANT ⬤➾86—LEASES—COVENANTS FOR RENEWAL—CONDITIONS PRECEDENT—WAIVER.

The sublease running beyond the term of the original lease, the formation of the corporation, the assignment of the lease to it, and the mortgage

---

⬤➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the leasehold indicated to the lessor the intention of the lessee to renew the lease, and in view of the embarrassing business situation which would be brought about by the loss through inadvertence of the premises, equity and good conscience required the lessor to promptly reject the notice of the lessee's election to renew, if it intended to stand on its right to 90 days' notice.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 270–275; Dec. Dig. ☞86.]

4. LANDLORD AND TENANT ☞86—LEASES—COVENANTS FOR RENEWAL—CONDITIONS PRECEDENT—WAIVER.

The promise by the railway company to renew the lease, having become effective by the writing of the formal letter requested, amounted to a waiver of the 90 days' notice, and acceptance of the 60 days' notice as sufficient, and an agreement to renew on the notice given.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 270–275; Dec. Dig. ☞86.]

5. LANDLORD AND TENANT ☞86—LEASES—COVENANTS FOR RENEWAL—CONDITIONS PRECEDENT—WAIVER.

Where the letter from the corporation containing the promise to renew specifically referred to the contracts between the parties, setting out the dates showing that the officer who wrote it had the lease before him, it could not be inferred that the promise to renew was made inadvertently, and that the officer writing it had lost sight of the condition contained in the lease merely because in a subsequent letter from the vice president of the railway company it was stated that he had discovered such condition on examination of the lease; the railway company and all of its officers concerned with the matter having presumptive knowledge of the contract to which it was a party and which was in its possession.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 270–275; Dec. Dig. ☞86.]

6. LANDLORD AND TENANT ☞86—LEASES—COVENANTS FOR RENEWAL—CONDITIONS PRECEDENT—WAIVER.

Assuming that the railway company's agreement to renew was due to inadvertence, such company had no equity to ask that it be relieved from its promise, as the lessee's failure to give 90 days' notice was also an inadvertence, and the denial of a renewal would result in great loss and hardship to it, while the railway company had suffered no loss or detriment from the failure to give the notice earlier.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 270–275; Dec. Dig. ☞86.]

7. LANDLORD AND TENANT ☞86—LEASES—COVENANTS FOR RENEWAL—CONDITIONS PRECEDENT—WAIVER.

Negotiations between the railway company and the lessee subsequent to the letter containing the promise to renew, in which the lessee assented to the statement that it had lost the right to a renewal by failure to give the 90 days' notice, and agreed to make a new lease on different terms, was not conclusive that there was no waiver of the 90 days' notice; no new lease having in fact been made.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 270–275; Dec. Dig. ☞86.]

8. WORDS AND PHRASES—"WAIVER."

"Waiver" is the intentional relinquishment of a known right, with both knowledge of its existence and intention to relinquish it.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Waiver.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. LANDLORD AND TENANT ⊂⇒86—LEASES—COVENANTS FOR RENEWAL—CONDITIONS PRECEDENT—WAIVER.

In a proceeding involving a question as to a lessee's right to a renewal of a lease, providing that, as a condition precedent to a renewal, the lessee should give 90 days' notice of its election to renew, whether the lessor relinquished its right to refuse to renew, where such notice was not given, was a question of fact.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 270–275; Dec. Dig. ⊂⇒86.]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Richmond, in Bankruptcy; Edmund Waddill, Judge.

In the matter of the Stanton Tanning Company, Incorporated, bankrupt. From a judgment dismissing the petition of the Southern Railway Company, opposed by Gustavus A. Peple, trustee, the Railway Company appeals. Affirmed.

Thomas B. Gay, of Richmond, Va. (Eppa Hunton, Jr., of Richmond, Va., on the brief), for appellant.

George Bryan and Henry C. Riely, both of Richmond, Va., for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. By a written contract dated November 1, 1900, Southern Railway Company leased to Marion H. Chalkley a vacant lot, now in the limits of the city of Richmond, for the term of 10 years beginning October 1, 1898, with the right of renewal for two other successive terms of 10 years. The lessee agreed to pay $35 a year rent and to erect a two-story brick warehouse on the lot. The contract provided, "as a condition precedent" to renewal, that the lessee "should first serve upon the railway company ninety (90) days' notice in writing of his election of such renewal prior to the expiration of any existing term of renewal thereof."

By a contract dated October 1, 1904, the railway company consented to a sublease of part of the lot to the Gus Kohn Company for 5 years from December 1, 1904; and on April 11, 1906, consented that Chalkley should assign all his rights under the lease to Stanton Tanning Company, a corporation formed to take over and operate the lessee's business, and that the Stanton Tanning Company should include the leasehold interest in a mortgage or deed of trust to secure an issue of bonds. These consents were given with the stipulation that the transactions made should be subject to the terms and conditions of the lease to Chalkley.

On August 1, 1908, 60 days before the expiration of the first lease term of 10 years, the Stanton Tanning Company, by letter, formally notified the railway company of its election to renew the lease for another period of 10 years. The failure to give the notice 90 days before the expiration of the lease term of 10 years, as required by contract, was due to the inadvertence of Chalkley, the president of the tanning company.

The tanning company, with the consent of the railway company, remained in possession, paying rents and taxes, ·about 4 years after the expiration of the first lease period. Before the expiration of that period, however, the railway company had asserted its claim of failure to meet the condition precedent to renewal and there were extended negotiations looking to a settlement of the differences between the lessor and the lessee. In January, 1912, the tanning company was adjudged a bankrupt, and its rights became vested in G. A. Peple, trustee. On October 18, 1912, the railway company filed its petition in the bankruptcy proceeding, setting out the lease, and alleging that the right to renew the lease had not been exercised since notice of the election to renew had not been given by the lessee 90 days before its termination as stipulated in the contract. On this ground the railway company asked immediate possession of the lot and the houses situated thereon, and compensation for the use since October 1, 1912. The District Court dismissed the petition, holding that the railway company had not clearly proved the forfeiture contended for, that it had waived the requirement of 90 days' notice, and that the tanning company had exercised the right of renewal. The question before us is whether the evidence affords sufficient support for the conclusion of the District Court.

[1-3] It is to be observed that the railway company is not in a strict sense setting up a forfeiture, for the lease was for 10 years, with the right of renewal made by the parties themselves to depend upon the 90 days' notice as a condition precedent. Yet, under the circumstances, the lessee's claim to relief appeals as strongly to a court of equity as if a technical forfeiture were involved. By the lease the lessee had contracted to erect a two-story brick warehouse 90 by 100 feet on the lot. He had incurred this expense with the knowledge that the warehouse would be forfeited unless he renewed the lease. Afterwards, when the original term had only 4 years to run, he had sublet the premises for a period extending 14 months beyond the 10-year term. He had organized a corporation to take over and continue the business a little over 2 years before the first term of 10 years had expired, and this corporation had executed a mortgage to secure its bonds.

We do not think, however, that these facts, standing alone, are sufficient in themselves to constitute evidence of waiver; for the consent of the lessor to the sublease and to the assignment and execution of the mortgage was expressly made subject to all the terms and provisions of the lease, and one of the provisions was that notice of 90 days should be a condition precedent to the renewal of the lease. Nor do we think that allowing the lessee to remain in possession and pay rent and taxes, pending the negotiation for adjustment of the differences between the parties, should be taken as in itself evidence of waiver. Continuance in possession by a tenant, with the payment of rent, will usually be regarded as renewal of the lease; the acceptance of the rent by the lessor being considered a waiver of any right to notice of intention to renew. Probst v. Rochester Steam Laundry Co., 171 N. Y. 584, 64 N. E. 504; Long v. Stafford, 103

N. Y. 274, 8 N. E. 522; Stone v. St. Louis Stamping Co., 155 Mass. 267, 29 N. E. 623; Benne v. Miller, 149 Mo. 228, 50 S. W. 824; Hotel Allen Co. v. Allen's Estate, 117 Minn. 333, 135 N. W. 812. But this rule does not apply where the possession is retained and the rent paid pending negotiations with respect to the renewal of the lease. Williamson v. Paxton, 18 Grat. (Va.) 475; Peirce v. Grice, 92 Va. 767, 24 S. E. 392; Grant v. White, 42 Mo. 285; Waring v. L. & N. R. Co. (C. C.) 19 Fed. 863; 24 Cyc. 1014.

But the sublease, running 14 months beyond the first lease period, the formation of a corporation to take over the business, Chalkley's assignment of the lease to that corporation, and the mortgage of the leasehold when the first lease period had only 2 years to run, indicated to the lessor the intention of the lessee to renew the lease. These transactions placed the parties in a relation to each other different from that which would have existed, had there been a mere option to lease upon acceptance of an offer within 90 days without an intervening lease period; and they have an important bearing on the inference to be drawn from the conduct of the lessor when the notice was given by the lessee 60 days before the expiration of the lease. Expense and labor had been incurred and plans had been laid out for the future which the lessor could hardly fail to know would not have been incurred and entered upon if the lessee had not been relying on a renewal of the lease. It seems, therefore, reasonable to infer that, if the lessor intended to stand on its right to 90 days' formal notice of the election to renew, it would have promptly rejected as insufficient the notice given 60 days before the expiration of the first lease period. Indeed, equity and good conscience required prompt rejection of the notice, so that the lessee might have immediate opportunity to relieve itself as far as possible from the embarrassing business situation which would have been brought about by the loss, through inadvertence, of a very important property right.

[4] The case, then, is narrowed down to the inquiry whether, under these circumstances and in these relations of the parties, the conduct of the lessor, after receiving the 60 days' notice, indicated an intentional acceptance of that notice as sufficient. Upon receiving the notice of August 1, 1908, 60 days before the termination of the first lease period, the lessor did not reply for 5 weeks. After that delay it responded to the notice on September 8, 1908, with an explicit promise to renew the lease upon the lessee writing a more formal letter on the subject to the vice president and general manager. The letter was written as requested, and the conclusion is inevitable that the promise became effective; for it was without other condition or qualification. The promise was given with knowledge of the arrangements which the lessee had before made for a continuance of its business, and in the full view which the lease contract presented of the right of the lessor to insist on 90 days' notice. Had nothing more appeared, there could be no doubt that the case would be this: A lease for 10 years, with the right to renew for 10 years on notice of election to renew 90 days before the expiration of the first lease period; transactions between lessor and lessee indicating plainly a purpose to re-

new; notice of election to renew 60 days before expiration of first lease period; waiver of 90 days' notice by acceptance of 60 days' notice as sufficient, and agreement to renew on the notice given.

[5] But it is said that the officer who agreed on behalf of the company to renew was not advertent to the condition of 90 days' notice required by the contract, and that the company should be relieved from the mistake. In the first place, it does not appear that the mind of the officer who wrote the letter did not advert to the condition required by the contract. It cannot be inferred that he had lost sight of the condition merely because the vice president, in a letter of September 16, 1908, said that he had discovered the condition on examination of the contract. The railway company, and all of its officers concerned with the matter, were under the presumption of knowledge of the contract to which the corporation was a party and which was in its possession. Surely this presumption is not rebutted as to other officers of the company by a letter of one officer, not sworn as a witness, to the effect that on examination he had found the provision of the contract. On the contrary, the letter of September 8, 1908, agreeing to renew, shows on its face that the officer who wrote it had before him the lease contract, for the letter refers specifically to all the contracts relating to the matter and sets out the dates.

The position that the officer who agreed to renew did so under the supposition that another notice had been given 90 days before the termination of the first lease period is untenable. The notice of August 1, 1908, on its face plainly indicated that it was intended as the formal notice of election to renew. The natural inference is that the railway company, having been already advised by its transactions with the tanning company that it would desire to renew the lease and having suffered no detriment from the lessee's failure to give 90 days' notice, agreed to renew the lease with knowledge of the condition of 90 days' notice, or that, without concerning itself with the condition it intended to waive it, whatever it might be.

[6] But let it be assumed that the agreement to renew was due to inadvertence; what equity has the railway company to be relieved against its agreement or the waiver implied by the promise? The lessee's failure to give 90 days' notice was also an inadvertence. It had made arrangements, and had had transactions with the lessor, which gave the lessor notice that denial of a renewal would result in great loss and hardship. The lessor had suffered no loss nor detriment from the failure to give the notice earlier. It had delayed 5 weeks an answer to a request for renewal, and had then given an unequivocal promise to renew. Plainly, under these circumstances, the lessor has no equity to ask that it be relieved from its promise. On the other hand, the lessee presents a very strong case for the enforcement of the new promise or the waiver implied by it.

[7-9] It is true there was uncontradicted oral evidence that after the letter of September 8, 1908, Chalkley, on behalf of the tanning company, made efforts to come to terms with the railway company on a new lease, and assented to the statement that he had lost the

right of renewal by failure to give the 90 days' notice. The voluminous correspondence on the subject also indicates that he thought his company's rights had been lost, and he agreed to make a new lease on terms different from the original. But the proposed new lease was never executed, and the railway company does not claim that there was a new contract. On the contrary, its claim to possession rests on the position that none was ever made, and that there is now no outstanding contract of any kind. The expression of opinion by Chalkley and his inference at the time that his company's rights had been lost is not conclusive. Since no new agreement was alleged or proved, the court must go back to the last binding transaction between the parties; that is, to the request or offer to renew the lease and the acceptance of the offer by the railway company. "Waiver is the intentional relinquishment of a known right, with both knowledge of its existence and intention to relinquish it." So. Ry. Co. v. Gregg, 101 Va. 308, 43 S. E. 570. Whether there was a relinquishment is a question of fact, and the evidence affords strong support for the finding that the railway company, with full knowledge of its right, intended to relinquish it, and did relinquish it by an agreement to renew the lease notwithstanding the failure of the lessee to comply strictly with the condition precedent.

It would be mere affectation to analyze and discuss the numerous and somewhat conflicting cases on the length to which the courts will go in relieving against strict compliance with the time requirement for the renewal of a lease or other contract. Every case depends upon the particular words used in the contract and the circumstances surrounding the transaction. Assuming the right of the lessor in this case to stand on strict compliance with the condition precedent that notice of election to renew be given 90 days before expiration of the first lease term, we affirm the judgment on the strong evidence leading to the conclusion that the lessor waived the requirement and agreed to renew without respect to whether the notice was in time or not.

Affirmed.