# First National Bank of Allentown *versus* Rex.

1. Where a national bank receives a special deposit for safe-keeping without reward it is liable only for gross negligence, and the burden of proving this gross negligence is on the plaintiff.

2. The bank under such circumstances is not responsible for that care which every attentive and diligent person takes of his own goods, but only for that care which the most inattentive take.

3. *It seems,* that the removal by such a bailee of the special deposit from one depository to another considered more safe does not increase the bailee's liability.

4. Bank of Carlisle *v.* Graham, 29 P. F. Smith 106, followed.

March 5th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, WOODWARD, TRUNKEY and STERRETT, JJ. PAXSON, J., absent.

Error to the Court of Common Pleas of *Lehigh county:* Of January Term 1879, No. 170.

Assumpsit by George Rex against the First National Bank of Allentown.

The defendant is a corporation chartered under the National Bank Act of January 3d 1864. On March 31st 1869, Rex called at the bank and made a special deposit of certain bonds of the United States. William H. Blumer, the president of the bank gave him a certificate, of which the following is a copy.

[First National Bank of Allentown v. Rex.]

"I certify that George Rex has on deposit for safe-keeping at the First National Bank of Allentown, Eight Hundred and Fifty Dollars in 5-20 United States bonds.

"WM. H. BLUMER, President.

"Allentown, March 31st 1869."

The bonds were received without any compensation, and were kept in the vault with the other valuable papers of the bank. It was shown that the bank was in the habit of thus receiving special deposits of bonds and other valuable securities for safe-keeping. No charge was made for thus keeping them, or collecting the interest thereon, and the president testified that the same care was exercised in keeping the papers of. other people as was exercised in the keeping of the papers of the bank. The interest on the bonds was regularly paid to Rex by the son of the president, who was the cashier of the bank. In the spring of 1877 the banking firm of William H. Blumer & Co., of which firm William H. Blumer was a member, became financially embarrassed, and in order to raise money to meet the claims of their depositors the bonds of Rex, with those of other depositors, were taken from the vault of the National Bank and hypothecated with a broker in Philadelphia, and the money obtained therefrom was used by the firm.

Rex testified that he called at the bank and asked Jacob A. Blumer for the bonds, and he said he could not give them to him as they had been sent to Philadelphia for safe-keeping; that the bank had sent all their papers of any worth to Philadelphia, and that those of Rex were among them; that he would get them back, and mentioned a particular time for their return. Mr. Fink, who had been sent to the bank by Rex with the certificate to procure the bonds, also testified that William H. Blumer had told him that the bonds had been sent to Philadelphia for safe-keeping. William H. Blumer being recalled, testified that the bank never had any bonds or papers in Philadelphia for safe-keeping.

The defendant upon this evidence moved for a nonsuit which the court refused. It then, without offering any evidence, submitted the following points, to which the answers of the court, Albright, P. J., are appended:

1. Under all the evidence the verdict must be for the defendant. Ans. "This instruction is refused."

2. The defendant being a bailee without reward and there being no evidence of gross negligence resulting in the loss, the verdict must be for the defendant.

Ans. "Before plaintiff can recover he must satisfy you that the bonds were lost through the gross negligence of the defendant; the question of the degree of negligence is for the jury."

3. It appearing in this case that the bonds were abstracted by the president for his own purposes, and there being no proof that the

[First National Bank of Allentown v. Rex.]

bank knew or had any reason to believe that the president was dishonest, the verdict should be for the defendant.

Ans. " If the bonds were abstracted by the president without the knowledge of the bank the defendant is not liable. Further answer to this point is refused, except so far as the same is answered in the general charge."

In the general charge the court, inter alia, said :

" When a party delivers to another goods without any reward on the part of the bailor to the bailee, or when the bailee undertakes to preserve the property thus delivered without any pay, that is what is called a 'gratuitous bailment,' and the bailee is required to exercise what is called only 'slight diligence' in taking care of the property. * * *

" And in a case like the one before us, when slight care is required to be exercised on the part of the bailee the defendant is liable only in case of gross negligence. Negligence is defined to be the absence of care, or the omission by a party to exercise that diligence which a prudent man ordinarily exercises in regard to his own property. Has the defendant in this case been guilty of that degree of negligence, viz.: gross negligence ? * * *

" It is also alleged on the part of the plaintiff, that William H. Blumer had used these bonds in Philadelphia to raise money for his own private purposes. This alone would not make the bank liable, if William H. Blumer or any one else abstracted those bonds or stole them ; but if you can find from the evidence that William H. Blumer did use these bonds for his own private purposes, and that such use by him was known to the officers of the bank, and there was an assent on their part to such improper use, or no effort was made to recover the bonds, if they were recoverable, that would be negligence on their part ; or if you find that the proper officers of the bank did send these bonds to Philadelphia for safe-keeping, the relation existing between Rex and the defendant would be changed from what it originally was. If the First National Bank of Allentown for its own convenience or profit selected some other depository for these bonds, it would be liable in case of loss even if but ordinary negligence were shown."

Verdict and judgment for plaintiff. The defendant took this writ and assigned for error the answers to the above points and the portion of the charge noted.

*Edward Harvey* and *R. E. Wright, Jr.*, for plaintiff in error.— The taking of special deposits for the accommodation of the depositor is not within the authorized powers of a national bank : Wiley v. First National Bank, 47 Vt. 546 ; First National Bank of Charlotte v. National Exchange Bank, 2 Otto 122 ; Whart. on Neg., sect. 470. Although this court has held that national banks may assume liability for the loss of special deposits, we respectfully sub-

mit that under the ruling in the Bank v. Bank, *supra*, these decisions should be re-examined.

There was not sufficient evidence of gross negligence to submit to the jury. The bank was a mere depository of the bonds without profit or reward. It kept them in the same vault and with the same care that it kept all the valuables in its custody. The person who took the bonds and used them for his private purposes, was the president of the bank, and as such, was privileged to go into the vaults at his pleasure. No one could deny his access to any part of the bank or could question his authority to supervise and examine the personal property owned by or in charge of the corporation. Unless, then, the bank had knowledge that the president was a dishonest or unfit person to exercise the authority of the office, and continued him in the employment or trust afterwards, it cannot be held liable. There must be *gross neglect* on the part of the bank, or there is no civil liability in a case like this: Coggs v. Bernard, 2 Ld. Raym. 909; Story on Bailments, sect. 23; Whart on Neg., sect. 469; Foster v. Essex Bank, 17 Mass. 479.

A bank is not liable for the default or dishonesty of its officers, provided due care was exercised in the selection of them: Whart. on Neg., sect. 469; Tompkins v. Saltmarsh, 14 S. & R. 275; Lloyd v. West Branch Bank, 3 Harris 176; Scott v. National Bank of Chester Valley, 22 P. F. Smith 477; First National Bank of Carlisle v. Graham, 29 Id. 116; Smith v. First National Bank of Westfield, 99 Mass. 605. It is the duty of the court to instruct the jury fully as to what constitutes negligence: P., F. W. & C. Railroad Co. v. Evans, 3 P. F. Smith 250; and the court should have defined what gross negligence is.

*John Rupp*, for defendant in error.—If it is the custom and habit of a national bank to receive bonds, or other valuable securities on deposit, for safe-keeping, with the privity and knowledge of the directors and officers of the bank, a liability for safe-keeping is raised, and if the securities are afterwards lost or stolen through the gross negligence of the bank, the bank becomes liable for the value thereof: First National Bank of Carlisle v. Graham, 4 Norris 91; Same v. Same, 29 P. F. Smith 106; Scott v. First National Bank of Chester Valley, 22 Id. 471.

*Gross negligence* is the want of that care which every man of common sense takes of his own property: 1 Chit. Con. 662.

The contract of bailees, without reward, is not merely for good faith but for such care as persons of common prudence in their situation usually bestow upon such property. If they omit such care it is gross negligence: Tracy v. Wood, 3 Mason 132; Scott v. First National Bank of Chester Valley, 22 P. F. Smith 471; Lancaster County National Bank v. Smith, 12 Id. 47; Story on Bailments 564.

This case is identical with that of the First National Bank of Carlisle *v.* Graham, 4 Norris 91.

Mr. Justice GORDON delivered the opinion of the court, March 17th 1879.

The learned judge of the court below was accurately correct when he instructed the jury that the defendant, in a case like that under consideration, was held only for gross negligence, and that it rested upon the plaintiff to show affirmatively that the bank was guilty of such negligence. He errs, however, when he comes to define what the term " gross negligence" means. He says, " In a case like the one before us, where slight care is required to be exercised on the part of the bailee, the defendant is liable only in case of gross negligence. Negligence is defined to be the absence of care, or the omission by a party to exercise that diligence which a prudent man ordinarily exercises in regard to his own property. Has the defendant in this case been guilty of that degree of negligence, viz., gross negligence ?"

Had this definition been omitted it might have been presumed that the jury, from the use of the terms slight care and gross negligence, would have reached a proper conclusion as to their meaning and effect, but in such case the presumption would be that the idea of ordinary care and ordinary prudence had been excluded, but this would necessarily exclude the learned judge's definition.

The fact is, the rule thus laid down by the court is the one which our brother WOODWARD, in the case of the Bank *v.* Graham, 29 P. F. Smith 106, adduces as decisive of the bailee's good faith and performance of his whole duty. In other words, as is said by DUNCAN, Justice, in Tompkins *v.* Saltmarsh, 14 S. & R. 275, " the bailee without reward is not bound to ordinary diligence, is not responsible for that care which every attentive and diligent person takes of his own goods, but only for that care which the most inattentive take."

It follows that if the defendant committed only a breach of ordinary care and diligence, in the keeping of the plaintiff's bonds, the verdict should have been in its favor.

Conceding that the bank, in case of gross negligence, would be liable for the loss charged, and we do not stop to discuss this question, as it has been definitely settled in the case of the Bank *v.* Graham, above cited, then what remains is the inquiry whether the defendant was grossly negligent in the care of the property committed to its charge.

On this branch of the case the court charged that the mere fact that Blumer, the president, had used the bonds to raise money for his own private purposes, would not of itself make the bank liable, but if this improper use by him of the plaintiff's property was known to the bank officers, and they assented thereto, or if they

[First National Bank of Allentown *v.* Rex.]

had knowledge thereof, and made no effort to recover this property if it were recoverable, that would be such negligence on their part as would render the bank liable.

This is good, sound law, but we fail to discover the evidence which adapts it to this case. If there was any evidence showing knowledge on part of any of the bank officers but Blumer and his son, of or concerning these bonds or their use, proper or improper, it does not appear in the records submitted to us. Again the learned judge says, " If you find the proper officers of the bank did send these bonds to Philadelphia for safe-keeping, the relation existing between Rex and the defendant would be changed from what it originally was. If the First National Bank of Allentown, for its own convenience or profit, selected some other depository for these bonds, it would be liable in case of loss, even if but ordinary negligence was shown."

The first sentence of the above quotation is not easy of comprehension; for if the bonds were in good faith transferred to a place considered more safe than that of the original deposit, we cannot see how the relations of the parties would be changed, or how the liability of the bank would be thereby increased. The same objection, however, lies to this and the succeeding sentence as to the main part of the charge as already stated, that is, there is no evidence to support them.

It is, indeed, true, that at one time Blumer, and at another time his son, when applied to for the bonds, said they had been sent to Philadelphia for safe-keeping, but it is evident from the whole evidence of the case that this was a mere fabrication to gain time. The fact is manifest and uncontradicted that Blumer had abstracted the bonds and used them for his own purposes. He himself admits this, and states that the bank had neither bonds nor papers of any kind in Philadelphia for safe-keeping.

About the fraud of Blumer there is no doubt, but that the directors knew of that fraud, or that they had reason to doubt the previous honesty of their president, there is literally not one word of evidence. Perhaps the plaintiff may do better on another trial, but as yet he has shown nothing which ought to have prevented the court from affirming the defendant's second point.

Judgment reversed, and new *venire* awarded.