# Weissburg *v.* Peoples State Bank of New Kensington.

*Banks and banking—Bailment without consideration—Loss by theft of officer—Directors—Corporations.*

1. Where a bank agrees to keep safely securities belonging to another party, without receiving any consideration for so doing, it will not be liable if they are stolen and converted by one of its officers or employees, unless the fact of their deposit was known to the board of directors and acquiesced in by them, or they knew, or had reasonable grounds to suspect, the integrity of the thief, and still retained him in office.

2. A corporation will be held liable for the acts of one of its officers, though he had no direct authority in the premises, if he purported to act with authority, and if the board of directors knew or should have known that he was acting as if he had such authority.

*Evidence—Documents—Res gestæ—Series of transactions.*

3. The law of res gestæ cannot be so applied as to require the admission in evidence of a document, which related to a series of transactions, each of which occurred long prior to the date of the paper.

Argued September 29, 1925. Appeals, Nos. 127 and 142, March T., 1925, by plaintiff and defendant, from judgment of C. P. Westmoreland Co., May T., 1923, No. 7, on verdict for plaintiff in case of David Weissburg v. Peoples State Bank of New Kensington. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ. Affirmed.

Asumpsit for value of securities delivered to defendant and not returned. Before Whitten, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $22,000 on which judgment was entered for $16,000. Plaintiff and defendant both appealed.

*Errors assigned* were various rulings and instructions, quoting record.

*Charles C. Crowell,* with him *Benjamin H. Thompson,* for appellant.—Delivery does not consist in the mere transfer of location or custody of property. There must be the mind of both parties, concurring in the transfer in accordance with the contract, the intent of one to deliver and the other to receive: Goss Printing Press Co. v. Jordan, 171 Pa. 474; Ætna Mfg. Co. v. Enos, 31 Pa. Superior Ct. 399; Weller v. Meeder, 2 Pa. Superior Ct. 488; First Nat. Bank of Allentown v. Rex, 89 Pa. 308.

There is nothing in the evidence showing knowledge on the part of the bank, or any of its officials, except Steiner, concerning the certificates in question or their use, proper or improper: Carlisle Bank v. Graham, 79 Pa. 106; First Nat. Bank of Allentown v. Rex, 89 Pa. 308.

The president of defendant bank had no authority to bind the bank when the paper on its face shows the transaction not to be within the usual course of the bank's business.

A bailee without hire must exercise only slight care and the burden is on plaintiff to prove want of it.

*N. McVicar,* of *McVicar, Hazlett, Gardner & Gannon,* with him *John C. Silsley,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, November 23, 1925:

Plaintiff sued to recover $22,000, the value of United States short term certificates of indebtedness, which he alleged he had purchased from defendant, but which the latter refused to deliver. He obtained a verdict for the full amount of his claim, subject to a point of law reserved as to "whether there is any evidence which entitles the plaintiff to recover the value of the certificates of the par value of $6,000," which formed part of the $22,000. Subsequently the court decided the reserved point in favor of defendant, entered judgment for plaintiff for $16,000, and these two appeals, one by each party, followed. In passing, it may be said that this was the second trial of the case, the verdict in the first being the same as in this one.

Plaintiff's appeal gives us little concern. Accepting his story as true, he went to the bank and purchased from it "$6,000 T. J. 1921 certificates due June 15, 1921," taking from the president of the bank a receipt specifying that they were left "for safe keeping." The Government had issued such certificates. Plaintiff says those he purchased were shown to him, but, as he could not then get a safe-deposit box, they were put in an envelope, on which his name was written, were placed by the president in the bank's safe, and were subsequently converted by the president to his own use. Plaintiff paid nothing for their safe-keeping, and, hence, even if we assume that the president's custody was the custody of the bank, it would not be liable for the tortious acts of its officer (Scott v. National Bank of Chester Valley, 72 Pa. 471; First Nat. Bank of Allentown v. Rex, 89 Pa. 308), unless the fact of the deposit was known to the directors and

acquiesced in by them (First Nat. Bank of Carlisle v. Graham, 79 Pa. 106), or they knew,. or had reasonable grounds to suspect, the integrity of the president, and still retained him in office (Scott v. Nat. Bank of Chester Valley, supra) ; on neither point was there evidence to submit to the jury.

The appeal by the bank has given us more concern, but a careful consideration of this branch of the case, has convinced us that there were controlling questions of fact, which had to be determined by the jury. It was shown by some of the evidence that the president of the bank was its organizer and principal stockholder, and had transferred to it, when chartered, the business he had theretofore carried on as a private banker; that he was constantly in attendance at the bank, was its "chief executive officer, and was in active charge of the operation of the bank"; was the official authorized to make purchases and sales for the bank, sometimes doing so without direct authority, but later reporting what he had done, his acts being then ratified by the board of directors; "had general charge of the bank......was actively engaged in the operation of its business...... [and] waited on customers in the bank"; "was the man that the board of directors delegated by way of operating the bank"; was authorized to buy and sell Liberty Bonds and Victory Bonds, and this authority was never revoked; and that his situation and conduct in the bank were such as to justify the belief that he had the same control over it as he had previously had over his private banking business, and that what he did, in carrying on the legitimate business of the bank, would be approved by the board of directors. Assuming all this to be true, the bank was what is sometimes termed a "one-man bank," and he was the "one man." Most of the important facts above detailed, were denied by defendant, but there was sufficient evidence from which the jury could find them to have been as stated, and hence defendant would be liable for its president's acts, unless the particular

business was ultra vires the bank: First Nat. Bank v. Colonial Hotel Co., 226 Pa. 292; Putnam v. Ensign Oil Co., 272 Pa. 301, 308. It is not contended, and surely could not be, that a bank's sale of its securities would be ultra vires. A different question would arise, if the president had taken the money to invest for plaintiff, for this would not have been within the usual course of business of a bank (First Nat. Bank of Allentown v. Hoch, 89 Pa. 324; Commonwealth Trust Co. v. First-Second Nat. Bank, 260 Pa. 223, 231), while a sale of its own securities was.

Plaintiff's evidence also showed that he went to the bank, intending to draw out certain moneys for the purpose of investing them in securities, which paid a higher rate of interest than the bank was paying on the deposit. While doing this, the president learned of plaintiff's purpose, and induced him to use the money in purchasing from the bank the $6,000 of short term certificates, already referred to. On later occasions he drew checks on his bank account in another institution, for the purpose of purchasing from the bank other short term certificates. Some of these checks were drawn to the order of the bank, some to the president, as president, and some to the president without his official title (some being filled out by him and then signed by plaintiff), and all were paid to the defendant by the drawee bank; it being alleged, however, that defendant credited all of them to its president's personal account. The bank's officers were unable to explain why this was done, as to the checks drawn to the order of the bank. All the transactions thus specified were had with the president, at the banking house. On each occasion, except the last two, plaintiff was then and there given a receipt, signed by the president, stating the purpose for which the money was paid, surrendering, on each purchase after the first, the receipt he then held, and obtaining a new one covering all the payments he had then made. When the sums thus paid aggregated $20,000, a receipt was

given as follows: "April 1st, 1922. Received of D. Weissburg, Twenty thousand Dollars. Cert. of Indebtedness 6% due July 1st, 1922. Peoples State Bank, New Kensington, Pa. Jas. J. Steiner, Pres." Payment of the two later sums, of $1,000 each, was simply endorsed on the receipt quoted. At none of the interviews, after the first one, when $6,000 was paid, were any certificates of indebtedness shown to plaintiff—in fact, the Government never issued certificates "due July 1st, 1922," and the bank owned no certificates of indebtedness—but the certificates, so the president falsely asserted, would be put by him in the envelope with the $6,000 worth first purchased. Subsequently he was arrested for his crimes, and is now serving a sentence therefor.

Some of the facts, stated in the preceding paragraph, were seriously disputed by defendant, and it further alleged, and there was evidence tending to show, that plaintiff's transactions were with the president individually, and not as an official of the bank; these questions were submitted to the jury, however, which decided against the bank's contention. Assuming the truth of the jury's findings—as we must on this appeal—the situation then is that plaintiff, at the place of business of the bank, purchased from it, through its president—who purported to act for it and had apparent authority so to do,—a number of short term certificates, which the bank was supposed to own and could properly sell; and, from this, it necessarily follows that the bank was legally required to deliver to plaintiff the securities which he had purchased, or to return the money he paid for them.

The evidence took a wide range, as perhaps was inevitable, since fraud was involved, but the whole case depended on the jury's findings regarding two propositions, (1) did plaintiff deal with the bank, as a bank, or with its president personally and (2), if the former, was the actual or apparent authority of the president

such as to justify the belief that he had the right to sell to plaintiff securities which the bank was supposed to own? The jury's verdict, favoring plaintiff's contention on these two points, being founded upon evidence sufficient for the purpose, consequently forecloses this appeal, unless there were trial errors calling for a reversal with a new venire. We find none such.

All the assignments, except the third and the sixth, allege, in varying forms, that defendant was entitled to binding instructions in its favor. This point has already been considered. The third objects to the action of the court in refusing to charge the jury that plaintiff could not recover unless "the transactions complained of were known to the defendant's officials, or subsequently ratified by them." This point was properly refused, since it ignored the possible liability growing out of the actual or apparent authority of the president to act as he did. The sixth assignment complains because of the refusal to admit in evidence, as part of the res gestæ, a paper written by the president, and found in his safe deposit box about August 1, 1922, after his defalcations became known. It is as follows: "May 23, 1922. I received from D. Weissburg during this and last year $22,000 which amount I lost in speculation, should be paid to him out of my life insurance." The dates above set forth —and the evidence discloses no other pertinent ones— show that the law as to res gestæ could not be applied to the document, for it relates to a number of transactions, each of which occurred long prior to its date. Moreover, it had no bearing on the issue being tried, for all that was there said might be true, and the defendant still be liable, if plaintiff supposed he was dealing with the president, as president, and was justified in so believing.

On each appeal, the judgment of the court below is affirmed.