## Titus et al. v. Gimbel Brothers, Inc.

*Frank A. Moorshead,* for plaintiffs.
*Charles E. Kenworthey,* for defendant.

SMITH, P. J., January 11, 1939.—This matter comes before us on a motion to take off a nonsuit. Plaintiffs, co-partners trading as the Titus Nursery Company, have a principal office for their nursery in the City of Baltimore in Maryland. Defendant, Gimbel Brothers, Inc., conducts a department store in Philadelphia where one

or more concessions are leased to outside organizations operating certain departments in that store.

In 1933, defendant had leased the concession to Superior Flower, Inc., which organization operated a flower shop in the store of defendant under the name and style of Gimbel's Flower Shop. There was no sign in the garden shop that it was or was not a department of that store. In the latter part of December 1932, J. D. Grove, a nursery salesman employed by plaintiffs, visited the store of defendant and there met a Mr. Graffman, an employe of Superior Flower, Inc. They discussed plaintiffs' plants and nursery products. As a result of this discussion, Mr. Graffman visited plaintiffs' plant at Baltimore during the latter part of February or early part of March 1933. After a discussion of purchase of nursery products, their agreement was later put in writing in a letter dated March 1, 1933, addressed by plaintiffs to Mr. Graffman, Gimbel's Garden Shop, Philadelphia. This letter related to the shipment of goods at prices quoted; stated that the Titus Nursery Company would supply display cards, advertising mats, and allow five percent for advertising. It further stated in paragraph four: "We understand that our goods will be offered on the main floor of Gimbel's in Philadelphia." There was evidence to support a theory that plaintiffs thought they were dealing with defendant at the time. There is also evidence, however, that the goods were billed to Gimbel Garden Shop and the invoice contains the memorandum: "Sold to Gimbel Brothers, Attention Mr. Graffman."

After a considerable quantity of plants and shrubs had been sold by plaintiffs to Gimbel Garden Shop and when there was a balance due of about $2,600, the Superior Flower, Inc., failed. Plaintiffs then brought this action in assumpsit against defendant. The evidence is convincing that the Gimbel Garden Shop was a concession, leasing a portion of defendant's store where it offered plants and flowers for sale, for which space it paid to defendant a commission of five percent of its profits. There was no

evidence showing that defendant had received the goods of plaintiffs and there was no evidence presented to show that defendant had authorized any agent to deal with plaintiffs for it in the purchase of these goods. The sole questions are:

(a) Was there any holding out by defendant of anyone with the appearance of authority to bind it?

(b) Should plaintiffs reasonably have believed that the one with whom they were dealing was authorized to bind defendant and were the facts justifying that belief due to the manifestation of defendant?

There are ample citations to the effect that testimony of a third party as to an alleged declaration of one claimed to be an agent does not establish the fact of agency. Defendant committed no overt act amounting to an acknowledgment that the garden shop concession was its agent in dealing with plaintiffs. There was no correspondence between plaintiffs and defendant in regard to these transactions. Plaintiffs contend that they were misled by the fact that the Gimbel Garden Shop was in the store of defendants and that it was known and permitted to be known by defendant as the Gimbel Garden Shop.

What was the holding out by defendant which would justify plaintiffs in believing that they were dealing with defendant?

Defendant merely leased a portion of its store to Superior Flower, Inc., which corporation was permitted to trade under the name of Gimbel Garden Shop. The very fact that the name of Gimbel Garden Shop was used in dealing with those selling its merchandise and that this name is distinctive and different from Gimbel Brothers, Inc., should convince any reasonable person that defendant did not mean to be bound by the actions of the Gimbel Garden Shop and it was not holding out this organization as its agent. It may well be that the holding out of one as its agent does not have to be intentional on the part of the principal if it permits such circumstances or acts to come to the attention of a third party as to make it

appear that it lends its name to things done by an alleged agent and cause that third party to reasonably act thereon. The only thing that defendant did in this case was to permit its lessee to use the name Gimbel as applied to the garden shop, located in its store, and in including an advertisement in its general advertisement in the newspapers. That is the only course of conduct upon which plaintiffs rely and that is not sufficient to support a finding that there was an apparent authority. It was not enough to make a reasonable person in the trade believe that the Gimbel Garden Shop was in fact Gimbel Brothers, Inc. While the actions of Graffman did well bind his employer, Gimbel Garden Shop, they in no degree are binding on defendant, and it is equally clear that plaintiffs dealing with Graffman or his employer had no right to believe from anything done by defendant that it was authorizing his or its actions. The burden was on plaintiffs to prove the authority of the one that they regarded as the agent.

In Diuguid v. Bethel African Methodist Episcopal Church of Pittsburgh, 119 Pa. Superior Ct. 493, Cunningham, J., said (p. 495):

"It is settled that ' "the party who seeks to charge a principal for the contracts made by his agent must prove that agent's authority; and it is not for the principal to disprove it. The burden is on the plaintiff" ': Long et al. v. Lehigh Coal & Nav. Co. of New England, 292 Pa. 164, 170, 140 A. 871; see also Davidsville First National Bank v. St. John's Church, Windber, 296 Pa. 467, 146 A. 102; Paper Mill Supply Co. v. Container Corp. of America, 301 Pa. 62, 151 A. 588; Reifsnyder et al. v. Dougherty, 301 Pa. 328, 152 A. 98. Hence, in proving the contract which he alleged, it was an essential part of plaintiff's case to show that the agents of the defendant with whom he dealt had authority, express, implied or apparent, to make that contract. Under the pleadings, plaintiff had the burden of proving every essential element of the contract upon which he relied."

In the same opinion the court discusses apparent authority and quotes the A. L. I. Restatement of Agency §161, as follows (p. 497):

"§161. Again, '. . . apparent authority to do an act may be created by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him' ".

The name of Gimbel Brothers, Inc., is well known to the trade and more especially to tradespeople. Any paper, invoice, or bill sent it by plaintiffs would have brought forward immediately the fact that the Gimbel Garden Shop was only a lessee in its store. Any communication such as a reasonable person might have sent defendant concerning the order or any part of the transaction would have brought the matter to a head. There is no evidence that any official of defendant corporation had any knowledge of plaintiffs regarding its lessee in the garden shop as their agent and there was no evidence of any affirmance by it of sales made to the Gimbel Garden Shop.

In Severance, Trustee, v. Heyl & Patterson, Inc., 123 Pa. Superior Ct. 553, Parker, J., said (p. 560):

"Such a corporation is ordinarily liable for the acts of its officer if the board of directors knew or should have known that he was acting as if he had such authority: *Weissburg v. Peoples State Bank*, 284 Pa. 260, 131 A. 181; *Culver v. Pocono Spring W. I. Co.*, 206 Pa. 481, 56 A. 29; *Dougherty v. Hunter*, 54 Pa. 380. Apparent authority is such authority as the corporation knowingly permits the officer or agent to assume or which it holds him out as possessing." And further it is said:

"Although it is ordinarily for the jury to say whether the facts show apparent authority upon the part of the agent to represent a corporation (*Farneth v. Commercial Credit Co.*, 313 Pa. 433, 169 A. 89), there must still be some evidence to support a finding that there was apparent authority."

In this case, there is no evidence to support a finding that there was apparent authority in the Gimbel Garden Shop to bind defendant and there is no evidence that would overcome the presumption that if plaintiffs had used reasonable care and precaution they would have ascertained the true facts.

*Order*

And now, to wit, January 11, 1939, the action of Lamberton, J., is affirmed and the motion of plaintiffs to take off nonsuit is refused.