## Harvey *v.* Gunzberg, Appellant.

*Landlord and tenant—Tenancy—Holding over.*

Where a tenant holds over after the expiration of his term, no new arrangement having been made, his holding becomes a tenancy for another year upon the same conditions as upon the former holding.

*Lessor and lessee—False representations by lessee.*

False representations made to lessor by lessee as an inducement to the making of the lease, will avoid the lease at the option of the lessor.

*Surrender—Evidence as to acceptance.*

Where lessee in an action for rent alleges a parol agreement on the part of lessor to accept a surrender, a letter by the latter inconsistent with such agreement is admissible in evidence.

*Justice of the peace—Jurisdiction—Act of May 29, 1879.*

The jurisdiction of a justice of the peace in an action for rent has been enlarged to $300 by act of May 29, 1879, P. L. 194.

Argued March 14, 1892. Appeal, No. 431, Jan. T., 1891, by defendant, Samuel Gunzberg, from judgment of C. P. Clinton Co., Sept. T., 1889, No. 268, on verdict for plaintiff, Franklin Harvey. Before PAXSON, C. J., STERRETT, WILLIAMS, MCCOLLUM and HEYDRICK, JJ.

Action for $262.50, rent in arrear, begun before a justice of the peace, brought into the common pleas on appeal by defendant.

On the trial before MAYER, P. J., the evidence was to the following effect:

On April 5, 1883, plaintiff and defendant entered into articles of agreement, by the terms of which plaintiff rented to defendant a store in the borough of Renovo for the term of two years, from April 5, 1883, at the yearly rental of $450, payable monthly at the rate of $37.50 per month, in advance. There was also a stipulation in the agreement that at the end of the two years defendant could have the privilege of leasing for an additional period of three years, making five years in all, from April 5, 1883, at the same rent. Under this lease defendant went into possession and continued in possession until April 5, 1888, having exercised his option of remaining in possession for the additional three years. At the expiration of that time, defendant did not surrender up possession of the

room, but continued until September 4, 1888, when he vacated the premises, and the store was unoccupied until April 1, 1889. Defendant paid plaintiff the rent to September 4, 1888, and the controversy in the case was in regard to the rent for the interval between September 4, 1888, and April 1, 1889.

As a defence to the action, defendant set up the refusal of plaintiff to give to defendant possession of another room of plaintiff's, a lease of which had been made to a third party who had assigned the same to defendant. As to this transaction, it was shown that one Leon S. Mendel had come to plaintiff representing that he desired to lease the premises in question for a clothing store, that he was worth $45,000, and that he proposed to occupy the premises himself. The rent of these premises was $300 per annum, and having procured a written lease thereof, on February 20, 1885, and paid one month's rent, which was repaid to him by defendant, Mendel assigned the lease to the latter. Plaintiff refused defendant possession of these premises, claiming that the lease had been procured by fraud, and defendant, as above stated, continued to occupy the premises originally leased by him. Defendant testified that on April 5, 1888, he had a conversation with plaintiff in which the latter said that defendant might stay as long as he pleased, and subsequently, when he told plaintiff that he had procured another room, plaintiff said that it was all right and accepted the surrender of the leased premises. Plaintiff denied that he had made any such statements, and his counsel offered in evidence a letter from him to defendant which was inconsistent with any such agreement on his part, and expressly declared that if defendant should abandon the premises, he would nevertheless look to him for the rent. The letter was objected to but admitted, and bill sealed for defendant. [4]

The court charged, in part, as follows :

" Now the question for the jury to determine under the evidence will be, in the first place, whether by Gunzberg holding over after the expiration of the lease on the 5th of April, 1888, he was a tenant for another year. [Where a tenant holds over after the expiration of his term, and no different arrangement has been made between the landlord and tenant, it would be a tenancy for another year, and the tenant would be bound in the absence of any different contract or agreement between the

landlord and tenant to pay the rent that he had paid under the lease for the year for which he was in possession. So that in this case, Gunzberg having held over after the 5th of April, 1888, it would be a tenancy for another year, unless Harvey and Gunzberg entered into a different arrangement in regard to the possession of the premises.] [1] The parties were competent to make another contract, by the terms of which both the landlord and tenant would be bound, even although the tenant did hold over. So that in this case it becomes a question of fact for the jury to determine from the evidence whether any different arrangement was made between Harvey and Gunzberg by the terms of which Gunzberg had the right to vacate these premises before the expiration of the year ending April 5, 1889. And this brings us then to the consideration of the parol testimony which has been introduced on the part of plaintiff and defendant in relation to what took place between the parties in regard to the occupancy of these premises for the additional year. Gunzberg states that sometime prior to the time when his lease expired, on the 5th of April, 1888, that he had a conversation with Harvey, in which he told him that he had no lease now for the year that was about to commence, and that his lease would expire on the 5th of April, 1888. Gunzberg states that in that conversation Harvey told him to stay as long as he pleased, it would make no difference whether there was a lease or agreement, he might remain in the room as long as he pleased. Gunzberg also states he had a conversation with Harvey sometime in May, 1888, after he had commenced to occupy the premises, in which he told Harvey he was about to lease a storeroom from Shuster, and that Harvey stated in reply to what Gunzberg had said, it was all right. Now on the other hand, Harvey states that in these conversations he told Gunzberg that he might have the room as long as he pleased, but he must pay the rent, that is the difference between the testimony of Gunzberg and that of Harvey in relation to these alleged conversations. It will be for the jury to determine from the evidence what was meant and intended by these conversations between Gunzberg and Harvey. This alleged agreement being by parol, it will be for the jury to determine what was the parol agreement. What was the understanding or agreement of the parties in relation to the occupancy

of this storeroom for the year ending April 5, 1889. Was it the intention or understanding that Gunzberg could vacate the premises and be relieved from the subsequent payment of the rent, or was it the understanding that he should remain in possession as long as he pleased and be bound to pay the rent? Now that is the question in controversy between the defendant and plaintiff, and it will be for the jury to determine from the evidence what the understanding was. If, as claimed by Gunzberg, that he could go out of the premises whenever he pleased and not be liable for the rent, the plaintiff would not be entitled to recover the amount of the rent. If, on the other hand, as claimed by Harvey, that Gunzberg could remain in possession as long as he pleased, but that he should pay the rent to the 1st of April, 1889, then even although Gunzberg vacated the premises on the 4th of September, 1888, he would still be liable to pay Harvey the full amount of the rent. The fact that Gunzberg vacated the premises and left the key with Harvey would not be a dissolution of the tenancy. The locking up of premises and delivering the key to the landlord, unless the landlord accepted the surrender of the premises, would not work a dissolution of the tenancy.

" It is further claimed by the defendant that on the 20th of February, 1885, a lease was entered into between a Mr. Mendel and Harvey for a store room adjoining the premises that Gunzberg was then in possession of, and a lease has been exhibited in evidence, executed by Harvey of the one part and Mendel of the other part, by the terms of which Harvey stipulated and agreed to lease to Mendel for a period of years, another storeroom adjoining the one occupied by Gunzberg, for the yearly rental of $300, payable monthly in advance, at $25.00 per month. This lease was on the 21st day of February, 1885, assigned by Mendel to Gunzberg, and the latter obligated himself to fulfill all the covenants contained in the agreement. There is nothing in the contract restraining the assignment of that lease. It appears from this lease that the printed portion of the lease, which prevented the assignment of the lease, was erased. Harvey says it was erased at the time the lease was executed, but erased under certain circumstances to which we will call the attention of the jury. Gunzberg had a right to employ Mendel to rent this room for him. There is noth-

ing in the law which would prevent Gunzberg employing Mendel to rent this room. He could make him his agent and he could assign the lease to Gunzberg, if the transaction was fair and no misrepresentations were made to Harvey and he had not been duped into executing the lease or deceived by misrepresentations made to him. The mere fact that Gunzberg employed Mendel to enter into this lease would not exonerate Harvey from carrying out the lease, if it was an honest transaction. But it is claimed on the part of Harvey that this lease was procured from him by misrepresentations. That Mendel represented to him that he was going to occupy the room himself or at least he intended to send two clerks on from New York. Harvey alleges that was why he wanted the erasures made in the body of the lease, that is, that portion of the lease which prevented the assignment of the lease without the consent of the landlord. [He represented that he was worth $45,000, and that he was going to occupy the room himself and going to have it run by two clerks, and wanted to put them in possession. Now if these statements were made to Mr. Harvey as an inducement to him to enter into this lease, and it turned out afterwards that these statements were false, Harvey would not be bound to carry out the terms of the lease, and he had a right to refuse to fulfill the terms of it.] [2] But if there was nothing else in the case except the mere fact that Gunzberg employed Mendel to procure the lease and turn it over to him, it would not relieve Harvey from the obligations of that contract. And it will be for the jury to determine, under all the evidence, whether or not this lease was procured by misrepresentation. If it was, Harvey would not be bound to carry out the lease and Gunzberg could not claim the benefit of the lease. . . .

" [A legal question has been raised by defendant for our determination, and that is whether the alderman had jurisdiction. It is claimed by counsel for defendant that as the amount in controversy was more than $100, the alderman had no jurisdiction. We are of the opinion that the alderman had jurisdiction, and we determine this question against the defendant.] [3] "

Verdict for plaintiff for $235 and judgment thereon. Defendant appealed.

*Errors assigned* were, (1–3) portions of the charge in brackets, quoting them; (4) the admission of plaintiff's letter, quoting the bill of exceptions.

*C. S. McCormick*, for appellant.

*H. T. Harvey*, for appellee, not heard.

PER CURIAM, March 28, 1892:

Judgment affirmed.

## In re Plunkett's Creek Township.

*Township lines—Ascertainment of—Practice—Act of April 15, 1834.*

Commissioners were appointed to "run, review and locate a line" between two townships, upon a petition which stated that "the location of the division line between said townships was not located in accordance with the desire of the petitioners who petitioned for a view to establish said line," and their report was absolutely confirmed.

*Held,* That this proceeding was void as not being authorized by the act of April 15, 1834, P. L. 539, or by any other act, and was therefore no bar to subsequent proceedings under the said act for the ascertainment or establishment of said township lines.

Argued March 14, 1892. Appeal, No. 27, July T., 1891, by Shrewsbury Township, from decree of Q. S. Lycoming Co., Sept. Sess., 1889, No. 112, on petition of citizens of Plunkett's Creek Township. Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and HEYDRICK, JJ.

Petition by citizens of Plunkett's Creek township to ascertain and establish the line between Plunkett's Creek and Shrewsbury townships.

The facts appear by the opinion of the court below, IKELER, P. J., of the Twenty-sixth judicial district, specially presiding, dismissing exceptions to the report of viewers, which was as follows:

"Exceptions to the report of viewers to view and mark on the ground and ascertain and establish the true line between Shrewsbury and Plunkett's Creek township in the county of Lycoming:

"The first, second, third, fourth and fifth exceptions involve the same questions passed upon by the court before the appointment of the viewers, and are therefore dismissed.