Severance, Trustee, Appellant, *v.* Heyl & Patterson, Inc.

Argued April 28, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Charles Alvin Jones,* of *Sterrett, Acheson & Jones,* for appellant.

*E. B. Strassburger,* with him *E. J. McKenna* and *J. F. McKenna, Jr.,* of *Strassburger & McKenna,* for appellee.

OPINION BY PARKER, J., October 5, 1936:

The defendant, claiming that the term of a written lease under which it had been occupying plaintiff's premises expired on April 30, 1931, removed from the premises at the end of the term and thereupon plaintiff caused a judgment to be entered, by virtue of a power of attorney to confess judgment contained in the lease, for a full year's rent beginning May 1, 1931, under a claim that the lease had been extended for that period. The court below discharged a rule to show cause why the judgment entered by plaintiff against defendant should not be opened and the defendant let into a defense and on appeal to the Su-

preme Court the order was reversed (308 Pa. 101, 162 A. 171). An issue was framed and trial was had in the court of common pleas, resulting in a judgment for the defendant in the amount of a counter claim for taxes paid by defendant and for which it was not liable. On appeal to this court the judgment was reversed for certain trial errors and a new trial awarded (115 Pa. Superior Ct. 36, 174 A. 787). The second trial resulted in a verdict for plaintiff for the full amount of his claim but the court below sitting en banc entered judgment n. o. v. for the defendant at the same time refusing defendant's motion for a new trial.

Two legal questions are raised by this appeal. (1) Was the evidence sufficient to support a finding by the jury that E. W. Heyl, Vice President of Heyl & Patterson, Inc., the defendant, had apparent authority to bind the corporation by a subsequent oral agreement changing the terms of the existing lease which was under seal and recited that it was executed by authority of the board of directors of the corporation? (2) Did the plaintiff prove the alleged oral agreement by testimony that was sufficiently definite and positive to justify the trial court in submitting to the jury a question as to whether the terms of the written lease were in fact altered?

The plaintiff having had a verdict we will review the evidence in a light most favorable to him as he is entitled to have us do. Heyl & Patterson Co., a partnership, became a tenant of plaintiff in 1899 and in 1904 it was succeeded by a corporation, the defendant, which continued to occupy the premises under written leases and extensions until April, 1920. At that time another written lease, which is the basis of this action, was made. That lease was for a term of three years from May 1, 1920 and contained a provision that in the event that neither party before May 1, 1922 gave

notice of a termination of the lease at the end of three years it should be in force for an additional year provided that "this provision which effects a renewal on default of notice shall apply to the one instance only and shall not itself be renewed." There was a further provision that an agreement to renew without mention of terms or a holding over with consent of lessor should constitute a renewal for one year only from the expiration of the term and so on for every year thereafter. The lease called for a monthly rental payable quarterly in advance and as a further rental for the payment of the amount of taxes levied after January 1, 1920 and before the end of the term, "on any machinery or other fixtures heretofore [theretofore] or hereafter [thereafter] placed by Lessee on or in the leased premises, and also the further rent of the amount by which the taxes levied on the leased premises for any tax year hereafter [thereafter] during the term exceeds the taxes levied on the leased premises for the present tax year [1920]." The rental measured by taxes was to be paid as soon as the taxes were payable to the municipality and this was held by the Supreme Court to require the payment of taxes, after the first year, by the tenant at the time such taxes were payable and for the whole year regardless of whether the lease was to terminate during such year. The lease was executed on behalf of the defendant by a signature as follows: "Heyl & Patterson, Inc. [Seal] By W. J. Patterson, Prest.", and contained the following recital: "The Board of Directors of Lessee has by resolution duly adopted directed the execution and delivery of these presents."

The defendant held over from year to year until April 30, 1931, when it vacated the premises, after having given notice to plaintiff of its intention so to do by letter dated March 10, 1931, received by plaintiff March 12, 1931. It is evident that by the terms of the lease

of April, 1920 the tenant had the right to terminate liability by surrender of the leased premises on or before April 30, 1931, but the plaintiff alleged a modification of the terms of the written lease by an oral agreement made in October, 1925.

The substance of the allegations and proofs on the part of the plaintiff as to such oral agreement was to the effect that in October of 1925 the plaintiff met E. W. Heyl, Vice President of the defendant company at its office and that it was then agreed by those two, Heyl representing the defendant, that thereafter when plaintiff billed defendant for excess taxes for the whole year and defendant paid the same, such action should be evidence of an agreement to renew the lease for another year from May 1 following and that they would continue so to evidence their renewal until either party "gave the other one year's notice in advance of the end of any lease year of his or its intention to terminate the lease and the tenancy thereunder at the end of any lease year's term." While the defendant denied that any such conversation was had between the two individuals named, the verdict of the jury requires us to assume that there was an attempt to make an oral agreement as claimed by the plaintiff. Accepting this situation, the defendant insists that Heyl did not have authority to bind the corporation and it is in law not bound by the agreement made by Heyl. The plaintiff depends upon a course of conduct on the part of the company and its representative to make out a case of apparent authority upon the part of the officer to bind the company. This brings us to a consideration of that part of the evidence which pertains to the immediate question involved; that is, the course of conduct relied upon.

Four written leases and four written extensions covering the entire tenancy of the defendant from May 1, 1904 to May 1, 1920, were offered in evidence and each

lease and extension was signed "by F. W. Severance, Trustee," and "Heyl & Patterson, Inc. by E. W. Heyl, Vice President" and contained "no mention of, nor reference to, any Board action by the lessee company in respect of said lease, the execution thereof, or otherwise." Although the lease of 1920 was executed by W. J. Patterson, as president, the plaintiff offered in evidence a letter dated January 23, 1920 from W. J. Patterson, President, to plaintiff which was as follows: "Some time ago we received a letter from you regarding a readjustment of rent. Mr. Heyl was at that time ill but I anticipated that he would return to the office almost any time. However, since he has found it necessary to leave the city for a considerable period, I will take this matter up with you and will do so almost any time that would suit your convenience. Please let me know in advance when you would want to stop in." Plaintiff argues that this letter tends to show that Heyl and not the president was the person chosen by the company to represent it in matters pertaining to the leasing of the premises. There were also offered in evidence twelve letters addressed to the plaintiff, three from the old partnership and nine from the corporation, all pertaining to some phase of the dealings between the parties with relation to the leasing of the premises, payment of rent, adjustment of taxes, insurance on the property or repairs to the property. All of these letters, nine on the stationery of the defendant, were either signed by Heyl or dictated by him and Heyl testified that he knew of no letters concerning these matters written by Patterson except the one recited above dated January 23, 1930. In addition, the plaintiff testified that all the dealings between the parties with reference to the premises were conducted on behalf of the defendant by E. W. Heyl except on two occasions, the one when the lease of 1920 was discussed and executed and another occasion when there was a

conversation between the parties as to a purchase of the premises and then both Heyl and Patterson were present.

The by-laws provided: "The President, who shall also be the General Manager, shall preside at all Meetings of the Board of Directors, and shall have general charge and direction of all the business of the Corporation; shall, with the Treasurer, sign all certificates of stock, and shall be vested with all the power and required to perform all the duties of the Treasurer during his absence or inability. The Vice President shall be vested with all the power and required to perform all the duties of the President and General Manager during his absence or inability." The only evidence as to the absence of the president was to the effect that Patterson was rarely absent from the place of business of Heyl & Patterson, Incorporated, prior to his death on February 21, 1931, and that when he was away it was only for a few days.

"As a general rule the powers of a private corporation, so far as its dealings with third persons are concerned, are primarily lodged in its board of directors": 14a C. J. 354. The board is the central power which authorizes the executive agents of the corporation to transact business for it, enter into contracts and embark upon new adventures. The extent and complexity of the affairs of modern corporations are such that it has become impracticable, if not impossible, for private corporations to function without vesting in agents authority to act for it in matters which involve the exercise of some individual choice or discretion on the part of agents. The rules governing the conduct of persons put forward to represent the corporation are the same as those involving other agents so that the laws of agency are here applicable. "A person who knows that the officer or agent of the corporation habitually transacts certain kinds of business for such

corporation under circumstances which necessarily show knowledge on the part of those charged with the conduct of the corporate business assumes, as he has the right to assume, that such agent or officer is acting within the scope of his authority": *Curtis L. & L. Co. v. Interior L. Co.*, 137 Wis. 341, 118 N. W. 853, 129 Am. St. Rep. 1068, 1076. "If a private corporation intentionally or negligently clothes its officers or agents with apparent power to perform acts for it, the corporation will be estopped to deny that such apparent authority is real, as to innocent third persons dealing in good faith with such officers or agents": 2 Fletcher Cyc. Corp. §449, p. 255. Such a corporation is ordinarily liable for the acts of its officer if the board of directors knew or should have known that he was acting as if he had such authority: *Weissburg v. Peoples State Bank*, 284 Pa. 260, 131 A. 181; *Culver v. Pocono Spring W. I. Co.*, 206 Pa. 481, 56 A. 29; *Dougherty v. Hunter*, 54 Pa. 380. Apparent authority is such authority as the corporation knowingly permits the officer or agent to assume or which it holds him out as possessing.

If the subject matter of the dealings between Severance and Heyl were that of an ordinary business transaction such as buying materials, selling the products of the corporation, or any of many similar things usually done by such agents, the case would present little difficulty and the well established rules of the law of agency could be readily applied. We have, however, here a different situation arising partly from the fact that the principal is a corporation and in part from other circumstances to which we will refer later. Although it is ordinarily for the jury to say whether the facts show apparent authority upon the part of the agent to represent a corporation *(Farneth v. Commercial Credit Co.*, 313 Pa. 433, 169 A. 89), there must

still be some evidence to support a finding that there was apparent authority.

This brings us to a consideration of the specific facts relied upon by the appellee. The alleged oral agreement of 1925 made by Heyl and Severance was in both of its essential elements in direct opposition to the written contract of April, 1920 made by the board of directors and expressly stated in the lease to be so made by authority of a resolution of the board. The written contract provided that defendant should pay certain taxes as soon as they were payable to the municipality and the Supreme Court has authoritatively decided that the rendering of a bill by plaintiff to defendant for such taxes for an entire year and the payment of such taxes to the plaintiff before April 30 of any year did not under the terms of the written lease amount to a renewal of the lease for another year. The alleged oral agreement was in direct opposition in this respect to the written contract. The second element of the oral agreement is likewise in direct contradiction of the writing. It is alleged by the plaintiff and has been found to be a fact by the jury that the vice president agreed that failure to give a full year's notice before the end of the term by one of the parties should effect a renewal for another year while it was specifically provided by the written lease that such failure should not constitute a renewal.

It is important to observe that the question involved is not of the right of the vice president to renew the lease for a year, but of the right of the vice president to change the terms of a contract made by the board of directors, governing renewals without specific authority from such board. The mere renewal of the lease for a year would not have contradicted the written contract. In fact such renewals were contemplated as possible and actual renewals were outside the specific terms of the contract.

"As a general rule the power to modify or rescind a corporate contract is in the board of directors, and not in the stockholders; and no other officer or agent can make such modification, even though he has power to make the contract, unless the directors authorize it. Thus the president has no implied power to modify a contract entered into by, or under the authority of, the directors": 14a C. J. 426.   Almost the precise question here involved arose in *Aliunde Cons. Min. Co. v. Arnold,* 16 Colo. A. 542, 67 P. 28, where it was said: "As the original power came from the board of directors, its change or modification must come from the same source, so that unless the board, after the lease was made, authorized the plaintiff to reduce the royalty or remit the mining expenses, his act in so doing was without effect, notwithstanding what Mr. Teller [Vice President] may have said or Mr. Turck [President] may have done."   Also see *K. S. S. Realty Co. v. Ostroff,* 100 N. J. Eq. 128, 135 A. 869.   An officer of a corporation certainly has no power merely by virtue of his office to alter the provisions of a formal agreement under seal made by authority of and for the benefit of the corporation, and no specific authority has been shown.   In addition we search the record in vain for a single item of evidence tending to show that Heyl has apparent authority to vary the terms of a written contract entered into by authority of the board of directors.   Viewing the evidence in a light most favorable to the plaintiff Heyl had negotiated the terms of former leases and extensions, but at no time had he performed any act from which it could be inferred that he might change a contract made by the board.

The entire course of conduct between the parties covering a period of twenty years shows that the parties invariably reduced to writing their contracts covering leases and extensions and whether made by president or vice president.   "Unless otherwise agreed, authority to

make a specified contract includes authority to make it in a usual form and with usual terms or, if there are no usual forms or terms, in an appropriate way ...... Where there is a statutory requirement that a contract be made in a particular form, or there is a custom to use a particular form necessary to give adequate protection to the principal, it is inferred that the agent is authorized to make it only in such form; in the absence of usage, any appropriate form is authorized": Restatement, Agency §51. The application of this principle in the concrete is illustrated as follows in the text: "P appoints A as his agent to contract for the sale of land ...... No statute requires a writing, but a writing is usual and is necessary for the protection of the principal. A has authority to contract in writing and not orally." It would seem peculiarly appropriate to apply that principle to the case in hand. For a score of years the parties had dealt only, with relation to the tenancy of the premises, by agreements in writing.

Although we apply to the question involved the liberal rules of construction with relation to the acts of agents allowed to act for a corporation, it must be borne in mind that these rules have usually been applied to the ordinary routine transactions of such an organization. Here we are dealing with a matter that goes to the very heart of the corporation and is of vital concern to its power to do business. The evidence shows that on these premises defendant had installed extensive and valuable machinery essential to the conduct of its business. Such matters are not usually delegated to subordinate agents. While the board should determine how a business should be conducted, the stockholders have the right to demand that the business be continued until they determine that it should be abandoned. The stockholders have delegated to the board of directors the conducting of the business but

they have a right to demand that those matters which involve the general policy of the organization and are of fundamental importance shall be determined by the board and not some other person. This was a feature that plaintiff was required to take into account when he was called upon to decide whether Heyl had been held out by the board as possessing the authority to do the things he pretended to do. Remembering that the final test is whether a man of ordinary prudence would be led to believe that the agent had the authority which he pretended to exercise, it cannot be said, viewing the evidence in a light most favorable to the plaintiff, that there was any evidence showing that the course of conduct was such that Severance had a right to assume that Heyl had apparent authority to change the terms of a contract in writing made by specific directions of the board of directors, by an oral agreement when the subject matter was one that vitally concerned the ability of the corporation to transact the business for which it was incorporated.

This conclusion makes it unnecessary to dispose of the second question involved although we agree with the court below that there is no merit in appellant's contention in that respect.

Judgment affirmed.