635 A.2d 1058

**CLAIRTON CORPORATION, Appellant,**

v.

**GEO–CON, INC.**

Superior Court of Pennsylvania.

Argued Oct. 19, 1993.

Filed Dec. 20, 1993.

John M. Studeny, Pittsburgh, for appellant.

Alfred W. Babb, Warrendale, for appellee.

Before CIRILLO, FORD ELLIOTT and CERCONE, JJ.

CIRILLO, Judge.

This is an appeal from an order entered in the Court of Common Pleas of Allegheny County denying appellant Clairton Corporation's (Lessor) motion for post-trial relief. We affirm.

Lessor and appellee Geo–Con, Inc. (Tenant) were parties to a commercial lease for a business premises located in Monroeville, Pennsylvania. The lease was for a term of two years. At the expiration of the two-year term, which was September 15, 1990, Tenant, with the consent of Lessor, remained on the premises for approximately seven months. During that time, Tenant continued to pay the same monthly installment rate as provided for in the two-year lease. The lease, which had been signed by the parties on August 10, 1988, provides in pertinent part:

TO HAVE AND TO HOLD THE said premises for a full term of two years, commencing on September 15, 1988.

\*　\*　\*　\*　\*　\*

The Tenant shall pay as rental hereunder the sum of One Hundred Seventy Three Thousand Eight Hundred Seventy–Seven and 36/xx Dollars in 24 equal monthly installments, without demand, of Seven Thousand Two Hundred Forty Four and 89/xx, beginning on the commencement of the term and on the first day of each calendar month thereafter.

\* \* \* \* \* \*

The lease did not include a "hold-over" provision and, at the end of the two-year term, the parties had made no definite new arrangements. Tenant eventually vacated the premises in April, 1991.

Lessor filed a complaint seeking to recover rent for the remainder of the one year hold-over term from early April, 1991 through September 14, 1991. Tenant claimed that it did not hold over; it was engaged in negotiations for a new lease for additional rental space with Lessor and, thus, became a month-to-month tenant. A non-jury trial ensued, whereupon a verdict was entered in favor of Lessor in the amount of $1,466.50.[1] Lessor, believing the verdict to be inadequate, filed post-trial motions which were argued and denied. This timely appeal followed. Lessor raises the following issue for our review:

Where a tenant for a term of years holds over after the expiration of the original term with the consent of the lessor, and where no definite new arrangement has been

1. At trial, the Lessor had claimed the following items of damage: (1) unpaid rent for the remainder of the one-year holdover term ending September 14, 1991, being a total of $39,846.90; plus, (2) late charges as required by the lease in the amount of $4,081.44; plus, (3) a partial underpayment of rent during one month of the original term of the lease in the amount of $967.50; minus, (4) a credit for a security deposit in the amount of $950.00.

The trial judge awarded damages as follows: (1) instead of unpaid rent for the remainder of the one-year hold-over term, only per diem rental from March 31, 1991 through April 6, 1991 (the date Tenant vacated the property), which totaled $1,449.00; plus, (2) nothing for late charges; plus, (3) the partial underpayment of rent during one month of the original term of the lease in the amount of $967.50; minus, (4) a credit for a security deposit in the amount of $950.00. Accordingly, the total damage award amounted to $1,466.50.

made between the lessor and the tenant, is the hold-over tenancy for a term of one year?

■ In support of its claim, Lessor cites principles established at common law. Specifically, when a lease for a term of years expires, and the lessee remains in possession, the landlord may, at his option, treat the lessee as a hold-over tenant; such law implies that the possession of the hold-over is subject to the same terms, conditions, and covenants as the old lease. *Pittsburgh v. Charles Zubik & Sons, Inc.*, 404 Pa. 219, 171 A.2d 776 (1961); *see also Reading Terminal Merchants Assoc. v. Rappaport Assoc.*, 310 Pa.Super. 165, 456 A.2d 552 (1983); *Mack v. Fennell*, 195 Pa.Super. 501, 171 A.2d 844 (1961). Lessor relies primarily on *Routman v. Bohm*, 194 Pa.Super. 413, 168 A.2d 612 (1961), where it was specifically held that the tenants, who had held over after an expiration of a three-year lease and continued to pay the same monthly rent, became tenants from year to year. The court in *Routman* set forth the following rule of law:

> [W]here following the expiration of a tenancy for a term of one or more years, the tenant with the consent of the landlord holds over, prima facie, *in the absence of evidence showing a contrary intent*, the normal inference from the conduct of the parties is that they thus exhibited an intent to convert the tenancy into one from year to year.

*Id.* at 414–15, 168 A.2d at 613–14 (emphasis added).

In further support of its position, Lessor relies upon *Harvey v. Gunzberg*, 148 Pa. 294, 23 A. 1005 (1892), one of the cases cited by this court in *Routman*. In *Harvey*, the Pennsylvania Supreme Court proclaimed that where a tenant holds over after the expiration of his term, and no different arrangement has been made between the landlord and tenant, a tenancy for another year is created. *Id.* at 295–96, 23 A. at 1005; *see also English v. Murtland*, 214 Pa. 325, 63 A. 882 (1906).

■ In its evaluation of the foregoing precedent, the trial court in this case found "evidence showing a contrary intent," *Routman, supra* regarding the term of Tenant's "hold-over." There is no question that Tenant continued to pay, and the

Lessor continued to accept, the monthly rental rate set forth in the expired lease. The record also reflects that, from approximately August, 1990 (one month before the termination of the two-year lease), through April, 1991 (when Tenant vacated the premises), the Lessor and Tenant were involved in negotiations for a new lease. The negotiations mostly centered around the fact that Tenant desired an increased amount of rental space.[2] At no time during their negotiations was there discussion of whether Tenant was occupying the space on a hold-over basis for a year or on a hold-over basis from month to month.[3] Thus, in light of the fact that there was an attempt to have a new lease drafted, the trial court refused to hold that Tenants had agreed to another yearly lease, finding, *inter alia*, that the parties' intent was contrary to the creation of a hold-over tenancy. We agree.

In addition to citing *Routman* and distinguishing it from the instant case, the trial court pointed to no other law in support of its conclusion. Indeed, our research on this specific issue reveals a scarcity of authority. We are convinced, however, that a hold-over for a term of one year was not created under the instant set of circumstances.

"[I]t is established law that mere continuance in possession and payment of rent does not *of itself* constitute a renewal of the lease with all its provisions." *Young Men's Christian Association v. Harbeson*, 407 Pa. 489, 492, 180 A.2d 916, 918 (1962) (citing *English v. Murtland, supra*) (emphasis added). In *Harbeson*, the lessee sought specific performance of an

2. At the time that the lease was in effect Tenant occupied 7,000 square feet of Lessor's rental space; Tenant wanted the new lease to provide an additional 3,000 square feet of space. The record reflects that Lessor was slow in responding to Tenant's requests for this new agreement.

3. On cross-examination, Joseph Jonnet, President of the Lessor corporation, testified as follows:

Q. So is it correct to say that you and Steve [Mr. Jonnet's nephew] decided that you would just simply treat it as a one-year election on your part, the landlord's part, and didn't feel an obligation to tell them anything; is that right?
A. Well, I felt they knew it.
Q. And how—
A. It's the law.

option to purchase certain property, as specified in a lease agreement between the lessee and lessor. The Pennsylvania Supreme Court specifically held that the lease agreement, including the option clause, was *not* renewed for a second five-year term when the lessee continued in possession of the property after the end of the first term. Rather, the Court looked to the specific facts of the case and came to the conclusion that there was a mutually agreed upon modification of the original lease agreement, the modification being the elimination of the option to purchase. Significantly, the Court took into account the fact that the lessor informed the lessee that he would no longer sell at the option price and that such price was to be renegotiated. Thus, when the lessee continued possession at the termination of the lease, his acceptance of the modification was implied.

We decline to follow Lessor's strict interpretation of the rule set forth in *Routman* and *Harvey* and, in light of the facts at hand, will instead adopt a more flexible approach. Like the court in *Harbeson,* we are of the opinion that Tenant's possession of the premises after the termination of the lease, in and of itself, does not automatically bind them to a renewal of their original lease agreement. When we consider the surrounding circumstances, specifically the failed renegotiation of the lease, we refuse to hold Tenant liable for another entire year's rent. *See Severance v. Heyl & Patterson, Inc.,* 308 Pa. 101, 108, 162 A. 171, 173 (1932) ("[t]he fact that money was paid as rent does not establish any particular term or holding and if the beginning of the tenancy or its length is in question, these facts must be shown by other evidence"); *Peterson v. Schultz,* 162 Pa.Super. 469, 58 A.2d 360 (1948) (fact that tenant has paid rent after expiration of term and the landlord has accepted it is not an affirmance of the lease for a new year but merely evidence of affirmance which may be rebutted by proof that such was not the intention of the parties). Lessor's acceptance of Tenant's rent, combined with Lessor's involvement in negotiations for a new lease to include more rental space for Tenant, clearly implies that Lessor knew that the terms and conditions of the

old lease would not have been acceptable to Tenant. It can be deduced, therefore, that under these circumstances, the creation of a month to month lease was more appropriate.

In further support of our conclusion, we are persuaded by the following language set forth in *Southern Ry. Co. v. Peple*, 228 F. 853 (4th Cir.Va.1915):

Continuance in possession by a tenant, with the payment of rent, will usually be regarded as renewal of the lease; the acceptance of the rent by the lessor being considered a waiver of any right to notice of intention to renew. *But this rule does not apply where the possession is retained and the rent paid pending negotiations with respect to the renewal of the lease.*

Id. at 856 (citations omitted) (emphasis added); *see also* 45 A.L.R.2d 841, § 6.[4] *Peple* involved a proceeding in which a lessor alleged that a right to renew a lease had not been exercised. The court held that the lessor had waived the notice requirement in the lease asking for ninety days' notice for exercise of the option to renew. In reaching this conclusion, the court looked to the following factors: the lessor knew that expense and labor had been incurred and plans had been laid out for the future in reliance on renewal of the lease; the lessor had allowed the lessee to remain in possession and pay rent and taxes after the end of the initial term, pending negotiations for a possible new lease; the lessor had delayed for approximately five weeks after receiving a sixty day notice from the lessee; and the lessor had responded to such notice that lessor would renew the lease on receiving a more formal letter from the lessee.

4. Landlord's consent to extension or renewal of lease as shown by acceptance of rent from tenant holding over:

§ 6. Circumstances rendering rule inapplicable; receipt of rent during negotiations for new lease.

Where a tenant remains in possession of realty after the expiration of his term, and during a period in which he and the landlord are negotiating for a new lease, and the landlord accepts rent for this period, it is uniformly held that such acceptance is not a manifestation of the landlord's consent to an extension or renewal of the lease. 45 A.L.R.2d 841, § 6.

We find it significant that, in finding for the lessee, the court in *Peple* looked to the fact that the lessor had allowed the lessee to remain in possession of the property after the lease had ended, that negotiations for a new lease were pending, and that the lessor had delayed in responding to the notice received from the lessee. The court focused on the conduct of the lessor in determining that the lessor had accepted the lessee's notice to renew. Although the instant case does not involve an option to renew, *Peple* lends analogous support for our decision to uphold the implication of a month to month lease. In reaching this decision, we, too, look to Lessor's conduct involving negotiations for a new lease, along with the delay incurred in doing so. When these factors are considered, it is clear that the parties' intent was not to enter into the same lease as was originally executed.

Our refusal to focus solely on the fact that Tenant has remained in possession of the property after the expiration of the lease is not in conflict with the rules set forth in *Routman* and *Harvey;* rather, it is consistent with them. In fact, the reasoning employed here can be considered an example of *Routman*'s "contrary intent" exception to the general rule regarding holdovers. Thus, because the parties' conduct evidenced an intent to enter into a new agreement, even though a new lease never actually came to fruition, such conduct was sufficient to invoke an exception to the common law rule making Tenant liable for another year's rent. In the interest of fairness, we will not disturb the trial court's conclusion, and hold that Tenant's occupation of the premises after the original lease had expired became a month to month tenancy.

Order affirmed.