IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lincoln Learning Solutions, Inc.          :
                                          :
                    v.                    :  No. 550 C.D. 2023
                                          :  Argued:  February 6, 2024
County of Beaver,                         :
                                          :
                    Appellant             :


BEFORE:     HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE LORI A. DUMAS, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY JUDGE WOJCIK                          FILED:  March 20, 2024


            Beaver County (County) appeals from the judgment entered by the
Beaver County Court of Common Pleas (trial court) in favor of Lincoln Learning
Solutions, Inc. (LLS) and against the County in the amount of $516,533.53 as
reimbursement for rent paid for the period of May 2016 to March 2021 plus interest.
The trial court declared that LLS is entitled to acquire title to the property by special
warranty deed upon demand and denied LLS's claim for reimbursement for payment
of real estate taxes on the property between 2016 and 2022.  In this appeal, the
County contends that the trial court erred because LLS was contractually obligated
to continue paying rent at the end of the lease term as a holdover tenant, and LLS
had notice of the lease termination in 2017 but did not exercise its option to acquire
the property.  Discerning no error, we affirm.

## I. Background

This case involves a dispute between LLS and the County over a commercial property located at 1000 Third Street, Beaver, Pennsylvania, upon which the Conservation Building is located (Property). In 2005, the County and the Pennsylvania Finance Authority (PFA) entered into a Lease and Sublease of the Property (PFA Lease). Pursuant to the PFA Lease, the County leased the Property to PFA, and PFA subleased the Property back to the County. PFA agreed to prepay rent to the County in the amount of $700,000.00 from funds derived through a bond issue – the "PFA Federally Taxable Series B Bonds of 2005 – County of Beaver Projects" (2005 PFA Bonds), and the County agreed to pay rent to PFA in an amount equal to the debt service due on the 2005 PFA Bonds. Reproduced Record (R.R.) at 505a-17a. The purpose of the 2005 PFA Bonds was to finance the County's leasing and renovation of the Property, which enabled the County to further sublease the same for office and commercial use.

At the same time, through a separate agreement, the County leased the Property to CALACO (CALACO Lease). Under Section 1.02 of the CALACO Lease, annual rent for the Property was stated as an amount equal to the lesser of actual rental proceeds from commercial tenants of the Property, or $80,000.00. A schedule attached to the CALACO Lease calculated rent installments of $6,666.67 per month. Section 1.06 of the CALACO Lease defined the "Lease Term" as terminating "on October 1, 2029, or, *such earlier date on which the Bonds are no longer outstanding . . . .*" R.R. at 520a (emphasis added); *see id*. at 314a. The CALACO Lease identified the term "Bonds" as the 2005 PFA Bonds. Section 1.06 of the CALACO Lease provided that, at the end of the lease term, CALACO shall

2

have the option to acquire title by deed of special warranty for "no additional consideration." *Id*. at 314a, 520a.

LLS is CALACO's successor in interest.[1]  For years, LLS continued to pay for rent and performed maintenance and repairs to the Property per the terms of the CALACO Lease.  LLS also paid real estate taxes to Beaver Borough, Beaver Area School District, and the County.  R.R. at 317a.

In 2016, the County issued new bonds (2016 County Bonds), which caused the 2005 PFA Bonds to be redeemed on May 13, 2016.  R.R. at 77a, 94a, 202a, 605a, 607a.  LLS was not notified of the redemption.  Between 2017 and 2018, LLS and the County exchanged correspondence regarding the status of the 2005 PFA Bonds.

By letter dated March 4, 2021, LLS requested the County to convey the Property for no additional consideration and to refund $406,666.26 in rent, which the County declined.  As of March 15, 2021, the County maintained the position that the 2005 PFA Bond obligation remained outstanding on the Property.  R.R. at 324a.

On April 26, 2023, LLS filed suit in the trial court against the County based on the terms of the CALACO Lease.  LLS's complaint asserted claims for breach of contract; specific performance; declaratory judgment; and unjust enrichment.  In support, LLS averred that the County never notified LLS that the 2005 PFA Bonds were redeemed upon the issuance of the 2016 County Bonds.  As a result, LLS continued to remit $6,666.67 in monthly rent pursuant to the CALACO Lease.  In February 2021, upon confirmation that the 2005 PFA Bonds were redeemed and no longer outstanding, LLS discontinued rent and set aside the

---

[1] In February 2008, CALACO assigned the lease to the National Network of Digital Schools Management Foundation (NNDS), which assumed all rights and responsibilities under the CALACO Lease.  R.R. at 611a, 616a.  NNDS now conducts its operations as LLS. *Id*.

3

payments in escrow. LLS asserted that, according to the terms of the CALACO Lease, once the 2005 PFA Bonds were no longer outstanding, the Lease terminated triggering LLS's option to acquire title to the Property for no additional consideration. LLS sought rent reimbursement for rent paid from May 1, 2016, through and including February 28, 2021, a period of 58 months in the total amount of $386,666.85 (58 x $6,666.67), as well as ancillary relief in the form of prejudgment interest, costs, and post-judgment interest. LLS also sought title to the Property.

Before the trial court, the parties entered a stipulation of facts and exhibits, including the CALACO Lease. R.R. at 307a-24a. Critically, the parties stipulated that the 2005 PFA Bonds were redeemed in May 2016 and are no longer outstanding. R.R. at 321a. LLS filed a partial motion for summary judgment as to the status of the CALACO Lease and its rights thereunder. The trial court determined that, upon redemption of the 2005 PFA Bonds, the bonds were "no longer outstanding," per the terms of the CALACO Lease, and LLS was entitled to acquire title to the Property as of May 2016.

Thereafter, the trial court conducted a non-jury trial on damages. LLS sought rent reimbursement, which the County opposed. The County argued that, as early as 2017, LLS knew that the 2005 PFA Bonds had been redeemed but LLS continued making rent payments having failed to exercise its option to take title. The trial court reviewed correspondence between the parties in 2017 and 2018 to determine whether LLS had notice. R.R. at 611a-26a. The trial court found that, although LLS inquired as to the status of the 2005 PFA Bonds in an effort to determine its rights under the CALACO Lease, the County's responses "skirted" the issue and failed to provide adequate notice that the CALACO Lease had expired.

4

Trial Court Op., 12/28/22, at 13. By final order dated December 28, 2022, the trial court awarded LLS reimbursement of rent totaling $393,333.53.

The parties then filed cross post-trial motions. The County requested reconsideration of the trial court's determinations, including whether the refinancing of the 2005 PFA Bonds terminated the CALACO Lease, whether LLS was aware of the bond redemption, and whether LLS's obligation to pay rent ended after redemption of the 2005 PFA Bonds. The County argued, for the first time, that LLS owed rent as a holdover tenant. *See* R.R. at 351a-52a. In turn, LLS's post-trial motion sought prejudgment interest. By order dated April 26, 2023, the trial court denied the County's post-trial motion and granted LLS's motion and awarded LLS $123,200.00 in prejudgment interest. The County's appeal to this Court followed.[2] By order dated July 28, 2023, this Court directed the County to seek entry of judgment in the trial court. Upon praecipe, the trial court entered judgment in favor of LLS and against the County in the amount of $516,5333.53 consistent with the orders dated December 28, 2022, and April 26, 2023.

## II. Issues

The County argues that the trial court erred when it determined that LLS did not have notice that the 2005 PFA Bonds were no longer outstanding. The County also argues that the trial court erred as a matter of law when it determined

---

[2] This Court's "review of a verdict following a non-jury trial is limited to determining whether the findings of the trial court are supported by [substantial] evidence and whether the trial judge committed error in the application of law." *M & D Properties, Inc. v. Borough of Port Vue*, 893 A.2d 858, 861 (Pa. Cmwlth. 2006). The trial court's findings "must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent an error of law or abuse of discretion." *Id*.

that LLS had no obligation to pay rent following the end of the lease term, despite LLS remaining in possession of the premises.

### III. Discussion
### A. Notice of 2005 PFA Bond Redemption

The County contends that the trial court erred in its determination that LLS did not have notice that the CALACO Lease had terminated upon the redemption of the 2005 PFA Bonds until March 2021. According to the County, substantial evidence clearly demonstrates that LLS learned that the 2005 PFA Bonds were "no longer outstanding" by, at the very latest, its letter stating as much dated November 21, 2017. We disagree.

By letter dated November 21, 2017, Counsel for LLS contacted the County Solicitor regarding the status of the 2005 PFA Bonds and rent obligation under the CALACO Lease. R.R. at 611a-13a. What prompted LLS's inquiry was notification from U.S. Bank, which served as trustee of the 2005 PFA Bonds, advising LLS that it was no longer under obligation to accept rent payments from LLS, and that it did not know how or where to apply those payments. *Id.* at 612a. Although the letter states that LLS had learned that the 2005 indebtedness was the subject of recent refinancing, "either a calling or a defeasance of the indebtedness resulting in the bonds no longer being outstanding," LLS goes on to state that it "cannot with 100[%] certainty hold firm to the belief that the indebtedness of the $925,000[.00] issue has been extinguished." *Id.* LLS sought information from the County regarding the outstanding debt status and its rights under the CALACO Lease. *Id.*

By letter dated December 20, 2017, the County Solicitor responded that "[w]hile the bonds have since been refinanced, the debt from these 2005 [PFA]

6

[B]onds has been carried forward into the refinance of newer bonds. Currently, $551,450.80, which includes interest, *remains outstanding on the bonds*. The County has documentation showing this debt if you would like a copy of it." R.R. at 614a (emphasis added).

By letter dated January 10, 2018, LLS Counsel requested copies of the documents reflecting the continued indebtedness of the post refinancing. *Id*. at 615a. On January 25, 2018, the County Solicitor provided documentation showing the outstanding debt service. R.R. at 617a. The record contains no further correspondence between the parties until the March 4, 2021 demand letter.

Upon review, the trial court did not err or abuse its discretion in finding that the County's responses regarding the status of the CALACO Lease and whether the 2005 PFA Bonds were outstanding were evasive and not forthright. The County consistently responded that the debt on the 2005 PFA Bonds remained outstanding. R.R. at 324a. Although the associated debt remained outstanding, the 2005 PFA Bonds themselves were redeemed upon the issuance of the 2016 County Bonds. The redemption of the 2005 PFA Bonds terminated the CALACO Lease. However, the County never advised LLS of the termination, and it consistently maintained that LLS remained obligated to pay rent. *See id.* at 614a, 617a. There is no evidence that LLS knew with certainty before March 2021, that the Lease had terminated per the terms of the CALACO Lease. Upon review, the trial court's finding that LLS did not have notice prior to March 2021 that the Lease had terminated is supported by substantial evidence.

### B. Holdover Tenancy

The County contends that the trial court erred when it determined that "rent is only due during the term of the lease" and because the lease terminated upon

the redemption of the bonds, no rent was due. Trial Court Op., 12/28/22, at 4. The trial court's ruling has the effect of allowing LLS to use and occupy the Property for over three years, to the exclusion of the County, rent free, which is contrary to Pennsylvania law applicable to holdover tenancies. According to the County, following the expiration of a multi-year tenancy, when the tenant with the consent of the landlord holds over, a presumption arises that the parties intended to proceed on a year-to-year basis under the same lease terms. *Clairton Corp. v. Geo-Con, Inc.*, 635 A.2d 1058, 1059 (Pa. Super. 1993). However, Pennsylvania law provides for no instance where a lessee is permitted to use and occupy a premise rent free after the termination/expiration of a tenancy. Therefore, the County maintains that the trial court's order requiring the County to reimburse LLS for four years of rent is improper.

The County raised this issue for the first time in its post-trial motion. R.R. at 351a-52a. Pa.R.Civ.P. 227.1(b) provides that "post-trial relief may not be granted" unless the issue was raised and preserved either in pre-trial proceedings or at trial. The purpose of a post-trial motion is to "provide the trial court with an opportunity to correct errors in its ruling and avert the need for appellate review." *Board of Supervisors of Willistown Township v. Main Line Gardens, Inc.*, 155 A.3d 39, 44 (Pa. 2017). Thus, we conclude that the County waived its holdover tenancy issue. Even if not waived, the trial court properly concluded that the County was not entitled to the relief sought.

In *Clairton*,[3] the Superior Court applied the common law principle that "when a lease for a term of years expires, and the lessee remains in possession, the

---

[3] In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues. *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

landlord may, at his option, treat the lessee as a hold-over tenant . . . ." 635 A.2d at 1059. "[S]uch law implies that the possession of the hold-over is subject to the same terms, conditions, and covenants as the old lease." *Id.* The Superior Court opined:

> [W]here following the expiration of a tenancy for a term of one or more years, the tenant with the consent of the landlord holds over, *prima facie*, *in the absence of evidence showing a contrary intent*, the normal inference from the conduct of the parties is that they thus exhibited an intent to convert the tenancy into one from year to year.

*Id.* (quoting *Routman v. Bohm*, 168 A.2d 612, 613-14 (Pa. Super. 1961)) (emphasis added).

In *Clairton*, "evidence showing a contrary intent" regarding the tenant's "holdover" was presented. 635 A.2d at 1060. Although the tenant continued to pay rent, and the lessor continued to accept the monthly rate set forth in the expired lease, the evidence showed that the tenant desired more space, and the parties were actively engaged in negotiations for a new lease. *Id.* There was never any discussion that the tenant was occupying the space on a holdover basis. *Id.* Considering the failed renegotiation of the lease, the Court refused to hold the tenant liable for another entire year's rent. *Id.* at 1061.

Here, the CALACO Lease provided that the Lease terminated when the 2005 PFA Bonds were no longer outstanding, and when the Lease terminated LLS had the right to take title to the subject premises without further consideration. *Id.* at 314a, 520a. On May 13, 2016, when the County redeemed the 2005 PFA Bonds as part of the 2016 County Bonds issuance, the CALACO Lease terminated. LLS remained in possession of the Property and continued to pay rent, without exercising the option to take title. However, unlike typical holdover tenancy cases, LLS did not knowingly remain in possession of the Property after the CALACO Lease

9

terminated. Although LLS continued to pay rent and the County continued to accept it after the Lease terminated, it was only because LLS had no knowledge that the Lease had, in fact, terminated. The County never notified LLS that the 2005 PFA Bonds were no longer outstanding, thereby triggering the CALACO Lease to terminate and LLS's option to take title. As discussed above, when LLS sought information about the 2005 PFA Bonds and its rights under the CALACO Lease, the County evaded those inquiries, steadfastly maintaining that the debt obligation was still outstanding and that LLS remained obligated to pay rent. LLS's inquiries regarding the bond status evidenced its intent to exercise its rights under the CALACO Lease and acquire title to the Property when the Lease terminated without further consideration, not to continue paying rent for the next 58 months as a holdover tenant. Such evidence shows a "contrary intent" to a holdover tenancy. *See Clairton*. Thus, even if the issue was properly preserved, we conclude that the trial court did not err in determining LLS did not owe rent as a holdover tenant and was entitled to rent reimbursement.

Accordingly, we affirm the trial court's entry of judgment.

_____
MICHAEL H. WOJCIK, Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lincoln Learning Solutions, Inc.     :
                                       :
            v.                : No. 550 C.D. 2023
                                         :
County of Beaver,                  :
                                         :
               Appellant    :

# **O R D E R**

AND NOW, this 20th day of March, 2024, judgment entered by the Beaver County Court of Common Pleas is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge