## Gatti v. Purcell et al.

*Charles A. Martens, Jr.*, and *J. S. Jiuliante*, for plaintiff.

*Reed & Spofford*, for defendants.

LARRABEE, J., twenty-ninth judicial district, specially presiding, October 20, 1937.—James Purcell, as lessor, and Charles Gatti, as lessee, entered into a written agreement of lease under date of November 29, 1933, for the rental of certain premises designated as No. 7 West Fifth Street, in the City of Erie, Pa., to be used as a cleaning and pressing shop, for the period beginning the first day of December 1933 and expiring on the first day of April 1934. The lease recited that it was "fully to be completed and ended at the expiration of said period without notice".

The lessee entered into possession of the premises and, after the expiration of said term on April 1, 1934, continued to hold over, with the implied consent of the lessor, but without any other agreement, either verbal or written, until February 4, 1935, when the lessor issued a landlord's warrant and levied upon certain goods of Gatti found on the demised premises.

Immediately following this levy Gatti served notice on Thomas J. Fuhrman, constable, that he claimed the benefit of the exemption law of April 9, 1849, P. L. 533, and its supplements, and requested the constable to set aside to

him property of the value of $300 out of the goods thus levied upon. The constable and James Purcell, lessor, disregarded the notice and proceeded to sell all the chattels and goods levied upon without setting aside to Gatti this exemption of $300.

The original written lease contains, inter alia, the express provision that the tenant waived the benefit of all stay or exemption laws of the Commonwealth of Pennsylvania.

In support of his claim for the exemption of $300, Gatti took the position that the original written lease had terminated upon the expiration of the term expressed in the lease, to wit, April 1, 1934, and from that time on the tenancy was a new one, separate and distinct from the tenancy created in the original lease, and that the several covenants and waivers contained in this original lease ceased to have any binding force and effect upon him, including the waiver of the exemption of $300, and that he was free to claim the exemption under the Act of 1849 and its supplements.

The question raised is whether such a holding over by Gatti constituted a tenancy that remained subject to all the provisions and covenants of the original written lease, including the waiver of exemption, or whether this original written lease had wholly terminated at the expiration of the term stated therein, to wit, on April 1, 1934, and its terms and conditions were no longer binding on Gatti.

The lessee contended that the right to the $300 exemption, under the Act of 1849, was of such a nature that an implied waiver could not be presumed to continue for the hold-over period.

The original written lease did not contain a renewal clause and did not provide that if the tenant held over after the term the tenancy would continue subject to the terms and conditions contained in the original lease. It is silent on these important questions.

The case came on for trial before Judge D. M. Larra-

bee, of the twenty-ninth judicial district, specially presiding, and he granted a compulsory nonsuit. Plaintiff filed a motion to take off the nonsuit and argument was had on the motion.

We are convinced after a review of the authorities that, in the absence of an express agreement to the contrary, when Charles Gatti continued to hold over and remain in possession of the demised premises after the expiration of the period set forth in the original lease, to wit, April 1, 1934, he continued to occupy the premises as a tenant subject to the terms and conditions of the original lease, and the waiver of the $300 exemption, contained in the original lease, continued in full force and was binding upon him as tenant during the period for which he held over, to wit, from April 1, 1934, down until the date of said levy, on February 14, 1935.

On this question of presumption as to terms of tenancy arising from holding over by consent we find the following principle set forth in 6 R. C. L. Supp. 4209, §682, under the title of "Landlord and Tenant":

"As a general rule, where a tenant holds over after the expiration of the term agreed upon in the written lease, and recognizes the continuation of the relationship of landlord and tenant by payment of rent, etc., the law implies in the new tenancy the continued existence of such of the covenants contained in the written lease as are applicable to the short-term tenancy, unless the facts of the case exclude such implication."

This is also quoted in the annotation contained in 34 A. L. R. 806.

In Hollis v. Burns, 100 Pa. 206, 209, the Supreme Court of Pennsylvania laid down the following principle, which we feel is controlling in the instant case:

"When, however, we are dealing with the question of an implied renewal of a tenancy, all the terms of the former lease must be considered. The purpose is not to make a new lease essentially different; but to continue the former so far as its terms may be applicable. In its

very nature the implied renewal of a lease assumes a continuation of its characteristic features. Hence if a landlord elect to treat one holding over as a tenant, he thereby affirms the form of tenancy under which the tenant previously held."

We find this same rule is applied in substance in the following decisions by the appellate courts of Pennsylvania: Finif v. Gearing, 106 Pa. Superior Ct. 419; McBrier v. Marshall et al., Execs., 126 Pa. 390; Harvey v. Gunzberg, 148 Pa. 294; Patterson v. Park et al., 166 Pa. 25; Bakewell v. Turner, 36 Pa. Superior Ct. 283; Fidelity Trust Co. v. Lee, 38 Pa. Superior Ct. 330. These cases seem to indicate that where a tenant remains in possession after the expiration of his term without having made any new arrangement with his landlord he is bound according to the obligations of the preceding lease.

The question raised here does not appear to have been flatly decided in any decision by our appellate courts, for the original written lease did not contain the customary renewal clause, included in so many of the printed leasehold forms, and after the term fixed in the original lease expired there was no agreement, oral or written, as to the terms under which the hold-over tenancy should continue. Furthermore, the original lease expressly stated that it was "fully to be completed and ended at the expiration of the said period, without notice".

In the light of the doctrines set forth in the above cited cases, we are of the opinion that the status of the tenancy where one holds over after the expiration of the term expressed in the original written lease, in the absence of a renewal clause in the original lease and any new oral or written agreement, is that it continues under and subject to all of the terms and conditions contained in the original written lease, with the exception, possibly, of the clause providing for confession of judgment.

Therefore, we conclude that the waiver of the benefit of the Exemption Act of 1849, and its supplements, expressly agreed to by Charles Gatti, lessee, in the original

written lease, continued to remain in full force during the additional period in which he continued to hold said demised premises from April 1, 1934, down to the date of the levy on February 14, 1935.

In Beatty v. Rankin et al., 139 Pa. 358, it was held that an express waiver by a lessee of "the benefit of all laws or usages exempting any property from distress or execution for rent" will be operative as to any property, whether seized upon a landlord's warrant or levied upon an execution on judgment for rent due.

We hold that Gatti, having thus waived his right to the benefit of the exemption laws, could not justly claim the exemption of $300 when said levy was made on his goods and chattels, and therefore, the landlord and constable could rightfully disregard his claim to have the amount of the exemption set aside out of the sale of the goods levied upon.

### Decree

And now, to wit, October 20, 1937, for the reasons above set forth, plaintiff's motion to take off said nonsuit is hereby refused.