Pfingstl *v.* Chenot et ux., Appellants.

Argued April 19, 1949. Before RHODES, P. J., HIRT, RENO, DITHRICH, ARNOLD and FINE, JJ. (ROSS, J., absent).

*Alexander D. Rosenbaum*, for appellants.

*John J. McGrath*, with him *McGrath, McGrath & McGrath*, for appellee.

Opinion by Fine, J., July 15, 1949:

Isabelle Pfingstl, appellee, instituted an action in assumpsit against John Chenot and his wife, appellants, for $20.00 additional monthly rent due for a fourteen month period beginning March 1, 1946. The case was heard by the court below without a jury and, after hearing, judgment was entered for appellee in the sum of $280.00. This appeal is from the order and judgment of the court below dismissing appellants' motions for a new trial and for judgment on the whole record. Appellants contend that during the period in question they continued as tenants from year to year under a written lease containing a covenant to pay only $60.00 a month, and not as appellee and the court below concluded, as tenants under an oral lease at an agreed rental of $80.00 a month.

Appellants and appellee entered into a written lease dated January, 1940, for premises situate at 1080 Steuben Street, Pittsburgh. The premises consisted of a store on the first floor and an apartment over the store. The term of said lease was stated to be from February 1, 1940, to January 31, 1941. The covenants contained in the lease gave to appellants the option of renting the premises at $55.00 per month the second year and at $60.00 per month for the third year. Appellants expressly waived to appellee the benefit of the Acts of Assembly requiring usual notice to vacate said premises at the end of the term, January 31, 1941, or at the end of any subsequent term for which the lease would be renewed, and covenanted and agreed to give up quiet and peaceful possession without further notice from said lessor or her agent. The following covenant related to continued occupancy of the premises after the end of the term: "If the Tenant lawfully occupies the premises after the end of the term, this Lease and all its terms, provisions, conditions, covenants, confession or confessions of judgment, waivers, remedies and any

and all of Lessor's rights herein specially given and agreed to, shall be in force for another Year and so on from Year to Year as long as the relation of Landlord and Tenant continues."

On December 21, 1942, approximately six weeks before the expiration of the third year of the tenancy, the appellee wrote to appellants, *inter alia*: "I want to notify you that your lease will not be renewed this coming February unless you pay the amount of Seventy-five dollars . . ."; and again, on December 28, 1942, appellants were similarly notified: "Please be advised that when your present lease expires on the 31st of January, 1943, I will not renew this lease. . . . However, if you wish to continue to occupy my property, a new lease will be drawn up by Mr. Koch, of the Carl Koch Co., Realtors, Wabash Ave., West End, Pgh., Pa. for a one year period at a rental of Seventy-five Dollars ($75.00) per month. . . . All arrangements concerning a new lease is to be taken up with Mr. Koch." Appellants signed no such lease, continued to occupy the premises, and paid as previously $60.00 monthly rental. Levy issued for the unpaid balance of $15.00 monthly, to and including January 31, 1946, and is still in litigation.

As the tenants apparently did none of the things required of them in the letter from their landlord to effect the proffered renewal of the lease, their continued occupancy after February 1, 1943, could have been treated by the lessor as a tenancy at sufferance or tenancy from year to year as a holdover, or perhaps on new terms, dependent, of course, upon evidence which may be offered on retrial. Three years later or about December, 1945,[1] and apparently before February 1, 1946, the appellants were orally advised that the rentals would be $80.00. There is no evidence of any oral accept-

---

[1] Lessor's notices of 1942 and of 1945 followed identical patterns.

ance of increased rentals by the tenants who refused to execute a written lease containing such terms. Later, by letter dated February 1, 1946, appellee advised appellants in writing that beginning March 1, 1946, the monthly rental would be $80.00 and that: "Unless I hear from you before the 15th day of February, 1946, I shall assume that you do not intend to make a lease, and proceed to secure a new tenant." Notwithstanding this letter, appellants, continued to occupy the premises until February 15, 1948, and tendered to appellee the sum of $60.00 per month.

The court below concluded that the written lease [dated January, 1940] and successive holdovers had been "supplanted by the subsequent notice of February, 1946 raising the rent"; that since the appellants had "continued in possession and use of the property after notice of the increased rent" that a new oral agreement had been consummated and that appellants were liable for the increased amount. Assuming, arguendo, that the written lease was in effect when the notice of February, 1946, was given, how could that lease be supplanted by such late notice, as under the holdover clause in said lease a tenancy for another year had already been created, beginning February 1, 1946, and the tenants' rights under the terms of the written lease had then been vested by the holdover? Moreover, there was no such meeting of minds as to constitute an oral lease. The landlord informed the tenants that she would assume they did not wish to contract if they did not contact her on a certain date. That day passed without word from the tenants, who merely continued in possession, apparently at the former rentals as holdover tenants. Such occupancy did not impliedly consummate an agreement to pay the increased rentals, which increase the tenants refused. "When the defendant held over the law gave a choice of remedies to the landlord. He might have looked upon the tenant as a trespasser and

summarily ejected him, or he might have treated him in holding over as a tenant by sufferance, or he might have regarded the holding over as a continuance under the terms of the lease. The law will not, by implication, infer an acceptance by the defendant of the terms which he had so persistently refused and which plaintiff had so insistently demanded as a condition" :[2] *Abrams v. Sherwin,* 269 Pa. 31, 33, 112 A. 235; also, 32 Am. Jur. Landlord and Tenant, §950. Cf. *Jawer v. Borner,* 273 Pa. 6, 116 A. 520.

The tenants (appellants) contend that they remained in possession of the premises under the hold-over clause in the written lease; that they so continued in occupancy and possession from February 1, 1943 [3] to February 15, 1948, as holdover tenants from year to year at a monthly rental of $60.00, that they did not agree to new terms, i. e. the increased rentals, but on the contrary refused to heed the lessor's requests. The intentions and actions of the lessor negative a tenancy at sufferance at any time; the tenure was treated by the parties as from year to year, however, at disputed terms of rental. In *Phillips v. Monges,* 4 Whart. 226, 229, the Court said: "When a landlord suffers the tenant to remain in possession, after the expiration of the tenancy, and receives rent from him, a new tenancy from year to year is established. And if no new agreement be entered into, the law will presume, in the silence of the parties, that the tenant holds the premises, subject to all such covenants contained in the original lease, as apply to

---

[2] Where a tenant from year to year holds over, in absence of a binding agreement superseding the lease he becomes liable on the terms of the original lease notwithstanding more than thirty days before termination he notified landlord he did not wish to renew the lease: *Snyder v. Henry,* 32 Pa. Superior Ct. 167; *McBrier v. Marshall,* 126 Pa. 390.

[3] Actually the rental at $60.00 monthly commenced February 1, 1942.

his present situation. (citing cases) Although payment of the rent is evidence of a tenancy, yet it is not the only evidence." See Trickett on Landlord and Tenant, §§488, 490, 491.

There is evidence that appellants paid rentals subsequent to February 1, 1943, at amounts fixed in the prior written lease, which were accepted by the landlord, all of which is indicative of a concession by her of the lessees' right to remain from year to year on previous terms. *Wilcox v. Montour Iron and Steel Co.*, 147 Pa. 540, 23 A. 840; *Harvey v. Gunzberg*, 148 Pa. 294, 23 A. 1005. The landlord cannot escape the continuance of a tenancy from year to year by giving notice she was terminating the lease conditionally but later ignoring the conditions of the termination. Actions speak louder and more effectively than words. The landlord's levy to collect the increased rentals during the period from February 1, 1943, to February 1, 1946, may be repugnant to the creation for that period of tenancy from year to year on previous terms, and may indicate her intent to establish a new oral lease from year to year commencing February 1, 1943. We are unable to fairly and justly determine the nature of the tenancy from the meagre and confused evidence before us. If determined a tenancy from year to year on previous terms [written lease], there can be no recovery on the record before us, as the appellants continued to hold over after February 1, 1946, on the fixed rental of $60.00 per month, extended by prior holdovers from year to year; if found to be a tenancy from year to year on new terms, commencing February 1, 1943, recovery would be on the terms of that new oral lease as established by evidence at a second trial.

As the case seems to depend primarily upon the nature of the tenancy, prior to February 1, 1946, which cannot be gleaned from the present record, this action with appropriate pleadings must be further proceeded

with in the lower court. However, on retrial the appellee is not precluded from showing still another tenancy, i. e. a tenancy from year to year on new terms after February 1, 1946, by adducing clear, competent and sufficient evidence, lacking on the first trial, for that purpose and to that effect. To the facts determined on retrial, the applicable law will determine the character of the tenancy and the nature of the verdict.

Judgment reversed, with a venire.